[No. B118582. Second Dist., Div. Six. Sept. 23, 1998.]

AL KEULEN, JR., Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, ATASCADERO
STATE HOSPITAL et al., Respondents.

COUNSEL

Wheeler & Beaton and Craig A. Kingscott for Petitioner.

Richard Krimen, Robert W. Daneri and Louis Harris for Respondents.

OPINION

GILBERT, J.—In workers' compensation proceedings, Labor Code section 4061 gives the parties an option when they do not agree to the employee's permanent disability rating based on the treating physician's evaluation.[1] Under certain circumstances, either party may select a qualified medical evaluator to conduct a comprehensive medical evaluation. (§ 4061.)[2] Section 4062 provides a similar option when the parties do not agree on other

---

[1] All statutory references are to the Labor Code.

[2] Section 4061, subdivisions (c) and (d) read: "(c) If the parties do not agree to a permanent disability rating based on the treating physician's evaluation or the assessment of need for continuing medical care, and the employee is represented by an attorney, the employer shall seek agreement with the employee on a physician to prepare a comprehensive medical evaluation of the employee's permanent impairment and limitations and any need for continuing medical care resulting from the injury. If no agreement is reached within 10 days, or any additional time not to exceed 20 days agreed to by the parties, the parties may not later select an agreed medical evaluator. Evaluations of an employee's permanent impairment and limitations obtained prior to the period to reach agreement shall not be admissible in any proceeding before the appeals board. After the period to reach agreement has expired, either party may select a qualified medical evaluator to conduct the comprehensive medical evaluation. Neither party may obtain more than one comprehensive medical-legal report, provided, however, that any party may obtain additional reports at their own expense. [¶] (d) If the

medical issues such as the treating physician's determination concerning the permanent and stationary status of the employee's medical condition. (§ 4062.)[3]

Section 4062.9 states that even with such comprehensive medical evaluation, the findings of the treating physician are presumed to be correct. The presumption is, however, rebuttable. Here we conclude the presumption was annihilated.

Al Keulen, Jr. (Keulen) petitions this court for a writ of review of the order of the Workers' Compensation Appeals Board (WCAB or the Board) denying reconsideration of its decision that Keulen only suffered a 2.25 percent permanent disability from industrial injury to his left thumb. The Board also decided that he did not suffer ulnar neuropathy to the left elbow arising from the injury.

parties do not agree to a permanent disability rating based on the treating physician's evaluation, and if the employee is not represented by an attorney, the employer shall not seek agreement with the employee on a physician to prepare an additional medical evaluation. The employer shall immediately provide the employee with a form prescribed by the medical director with which to request assignment of a panel of three qualified medical evaluators. The employee shall select a physician from the panel to prepare a medical evaluation of the employee's permanent impairment and limitations and any need for continuing medical care resulting from the injury. [¶] The report of the qualified medical evaluator and the reports of the treating physician or physicians shall be the only admissible reports and shall be the only reports obtained by the employee or the employer on the issues subject to this section. If the employee has received a comprehensive medical-legal evaluation under this subdivision, and he or she later becomes represented by an attorney, he or she shall not be entitled to an additional evaluation. In no event shall the employer be entitled to obtain another report in these cases."

[3]Section 4062, subdivision (a) reads: "(a) If either the employee or employer objects to a medical determination made by the treating physician concerning the permanent and stationary status of the employee's medical condition, the employee's preclusion or likely preclusion to engage in his or her usual occupation, the extent and scope of medical treatment, the existence of new and further disability, or any other medical issues not covered by Section 4060 or 4061, the objecting party shall notify the other party in writing of the objection within 20 days of receipt of the report if the employee is represented by an attorney or within 30 days of receipt of the report if the employee is not represented by an attorney. These time limits may be extended for good cause or by mutual agreement. If the employee is represented by an attorney, the parties shall seek agreement with the other party on a physician, who need not be a qualified medical evaluator, to prepare a report resolving the disputed issue. If no agreement is reached within 10 days, or any additional time not to exceed 20 days agreed upon by the parties, the parties may not later select an agreed medical evaluator. Evaluations obtained prior to the period to reach agreement shall not be admissible in any proceeding before the appeals board. After the period to reach agreement has expired, the objecting party may select a qualified medical evaluator to conduct the comprehensive medical evaluation. Neither party may obtain more than one comprehensive medical-legal report, provided, however, that any party may obtain additional reports at their own expense. The nonobjecting party may continue to rely on the treating physician's report or may select a qualified medical evaluator to conduct an additional evaluation."

Keulen presented undisputed medical evidence of ulnar neuropathy arising from the injury subsequent to the complete medical release by his original treating physician. We annul the decision of the Board because it misconstrues the law and is not supported by substantial evidence.

## FACTS

Keulen, a carpenter, injured his thumb while at work. He suffered atypical pain. His treating physician, Mark F. Mooney, referred him to Doctor Vincent R. Hentz, who performed a surgical metacarpal joint fusion on his left thumb joint on March 14, 1995. On July 27, 1995, Doctor Hentz reported that Keulen's fusion "appears to be very solid and [X]-rays confirm this." Doctor Hentz released Keulen to full duty on July 31, 1995. On October 31, 1995, Doctor Hentz again reported that "X-rays demonstrated satisfactory fusion . . . ."

On December 16, 1996, Keulen applied for adjudication of his claim before the WCAB. Keulen was represented by counsel. Doctor Mooney submitted his report of January 11, 1996, which stated that, as a result of the industrial injury, Keulen exacerbated "basal joint arthrosis" suffered in a previous injury. (§ 4061.5.) Keulen still had difficulty moving his thumb, picking up and manipulating small objects. He felt a "[t]ight sensation" over the base of the thumb, among other things.

In his report, Doctor Mooney stated that Keulen's complaints are "consistent with the *attempted* fusion," and that Keulen "may be considered permanent and stationary at this time." (Italics added.) Doctor Mooney took X-rays that he believed demonstrated that the joint had a "well contoured surface for effusion." He stated, "There does, however, still appear to be a lucency in the area." Although Doctor Hentz agreed that "there is some persistent radiographic lucency, . . . he feels that clinically there is truly fusion present . . . ." Lucency in X-rays indicates that a joint did not fuse.

Doctor Mooney stated that Keulen could return to his routine, regular and customary duties. Doctor Mooney concluded that Keulen "does not require any [further] active medical intervention." Doctor Mooney cautioned, however, that "[s]hould he develop recurrence of pain over the basal joint, I would recommend a further imaging study of the quality of the fusion . . . ."

After returning to work, Keulen noticed that the symptoms around his thumb worsened, and he began to experience numbness in the last three fingers of his left hand. The State Compensation Insurance Fund (SCIF)

offered Keulen a 2.25 percent disability rating. Keulen objected to Doctor Mooney's findings and requested an agreed medical examiner pursuant to section 4062. SCIF did not respond to the request, and on March 28, 1997, it declared its readiness to proceed.

Keulen arranged for his own qualified medical evaluator, Doctor Donald R. Schwartz, to conduct a comprehensive medical evaluation. (§§ 4061, 4062.) Doctor Schwartz reviewed the relevant medical records and examined Keulen on April 22, 1997. Keulen told Doctor Schwartz that sometime after Doctor Mooney released him to return to full activities, he noticed the onset of numbness predominantly in the ring and index fingers of his left hand. The numbness in his left hand was becoming worse, and he felt new pains in his wrist. Keulen informed Doctor Mooney about these symptoms, but Doctor Mooney told him that his symptoms would probably go away eventually or he would simply learn to live with them.

When Doctor Schwartz examined Keulen, Keulen reported that the pain restricted his activities upwards of 70 percent of the day, and that he had to alter the way he uses his left arm and hand. On April 22, 1997, Doctor Schwartz X-rayed Keulen's left hand and wrist. The X-rays revealed "what appears to be a nonunion at the carpometacarpal joint of the thumb." Doctor Schwartz concluded that the joint did not fuse after surgery. Keulen needed to compensate for the increasing pain in his wrist area by abnormally using his upper left extremity. Keulen began to suffer from ulnar entrapment neuropathy in his left elbow.

Doctor Schwartz concluded that Keulen's condition had not become permanent and stationary in January 1996, and that his condition had deteriorated. Keulen suffered "new symptomatology with the ulnar nerve entrapment problem." Doctor Schwartz pointed out that Doctor Mooney's own review of the previous X-rays revealed lucency in the area of the purported fusion which suggests that no union occurred. Although Keulen had previously suffered from arthritis of the carpometacarpal joints of the thumb, Doctor Schwartz concluded that Keulen's current thumb disability was entirely due to the injury at issue here. Keulen developed ulnar neuropathy as a result of his accommodation for the ongoing pain in his thumb. The pain persisted because of failure to treat the nonunion of the thumb joint to the wrist. The failure of the surgery to fuse the joint exhibited itself in both sets of X-rays taken by Doctors Mooney and Schwartz. SCIF did not send Doctor Schwartz's report to Doctor Mooney for review, comment or rebuttal.

At the WCAB hearing on July 17, 1997, Keulen testified without contradiction that, in March or April 1997, he was continuing to lose range of

motion of his left thumb. Furthermore, he was experiencing sharp, intense pain in his wrist and numbness in his outside three fingers which did not exist when he last saw Doctor Mooney. The medical reports presented into evidence included the X-rays that showed lucency in the area of the joint. SCIF did not cross-examine Keulen, nor did it present any witnesses. On September 17, 1997, a disability evaluator recommended rating the disability at 2.25 percent.

The workers' compensation referee found that Keulen's injury to his left thumb caused 2.25 percent permanent disability for the total sum of $945. He determined that Keulen did not sustain injury resulting in ulnar neuropathy, but that Keulen is in need of future medical care. The referee awarded Keulen $945 less attorney's fees of $113.40.

The referee did not believe that Keulen overcame the presumption that the treating physician's opinion is correct pursuant to section 4062.9. He opined that "[a]s noted in *Minniear* v. *Mt. San Antonio Community College District* (1996) [61 Cal.Comp.Cases 1055], the treating physician is presumptively correct and an opinion that essentially disagrees with that of the treating physician is not . . . sufficient to rebut that presumption."

In his report, the referee "recognizes that Dr. Schwartz indicates that applicant is not permanent and stationary and entertains a different diagnosis, the undersigned is simply not convinced that the presumption has been overcome. [¶] Therefore, the undersigned has relied upon the report of Dr. Mooney . . . for the factors of disability which have been described to the rater. Additionally, the undersigned has not found injury resulting in ulnar neuropathy, also, based on that [Doctor Mooney's] opinion."

Keulen petitioned for reconsideration. In his recommendation to the WCAB, the referee opined that "a report which merely differs as to the extent of permanent disability is not, in and of itself, sufficient to rebut the presumption of correctness." Although the referee acknowledged that Doctor Schwartz's report was well thought out, he dismissed it as merely more up to date and more consistent with Keulen's testimony.

The WCAB relied on the referee's report and denied the petition for reconsideration. This appeal ensued.

## DISCUSSION

" 'In considering a petition for writ of review of a decision of the WCAB, this court's authority is limited. This court must determine whether

the evidence, when viewed in light of the entire record, supports the award of the WCAB. This court may not reweigh the evidence or decide disputed questions of fact. [Citations.] However, this court is not bound to accept the WCAB's factual findings if determined to be unreasonable, illogical, improbable or inequitable when viewed in light of the overall statutory scheme. [Citation.] Questions of statutory interpretation are, of course, for this court to decide. [Citations.]' " (*Mote* v. *Workers' Comp. Appeals Bd.* (1997) 56 Cal.App.4th 902, 909 [65 Cal.Rptr.2d 806]; *Western Growers Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233-234 [20 Cal.Rptr.2d 26]; see also §§ 5950, 5954; *Chu* v. *Workers' Comp. Appeals Bd.* (1996) 49 Cal.App.4th 1176, 1182 [57 Cal.Rptr.2d 221].) "All aspects of workers' compensation law . . . are to be liberally construed in favor of the injured worker." (*Save Mart Stores* v. *Workers' Comp. Appeals Bd.* (1992) 3 Cal.App.4th 720, 723 [4 Cal.Rptr.2d 597]; § 3202.)

■ Section 4062.9 explains that "[i]n cases where an additional comprehensive medical evaluation is obtained under Section 4061 or 4062, the findings of the treating physician are presumed to be correct. This presumption is rebuttable and may be controverted by a preponderance of medical opinion indicating an [*sic*] different level of impairment. However, this presumption shall not apply where both parties select qualified medical examiners." (Fn. omitted.)

Sections 4061 and 4062 concern admitted injuries where issues such as appropriate medical treatment, temporary or permanent disability or vocational rehabilitation exist, as here.

■ The parties rely on *Minniear* v. *Mt. San Antonio Community College District* (1996) 61 Cal.Comp.Cases 1055. *Minniear* is an in bank decision discussing the nature and effect of section 4062.9. The Legislature enacted section 4062.9 to reduce costs by reducing the number of physicians participating in each workers' compensation proceeding. (61 Cal.Comp.Cases at pp. 1059-1060.) *Minniear* explains that the presumption stated in section 4062.9 affects the burden of proof.

The presumption requires the party against whom it operates to show, by a preponderance of medical opinion, that a different level of impairment exists. (*Minniear* v. *Mt. San Antonio Community College District, supra,* 61 Cal.Comp.Cases at p. 1060.) The presumption applies to any and all of the medical issues covered by sections 4061 and 4062. (*Ibid.*) Thus, *Minniear* states that a preponderance of the evidence indicating a different level of impairment may rebut the treating physician's view on appropriate medical

treatment and whether the disability is temporary or permanent at a given point in time. (See §§ 4061, 4062.)

*Minniear* acknowledged that "each case presents its own facts and evidence." (*Minniear* v. *Mt. San Antonio Community College District, supra,* 61 Cal.Comp.Cases at p. 1060.) Certain general principles apply, however. Evidence from a lay witness is not substantial evidence; medical proof is required on diagnosis, prognosis and treatment which are beyond the bounds of ordinary knowledge. (*Id.,* at pp. 1060-1061.)

Also, the chronological sequence of examinations is not dispositive. "Unless the treating physician's opinion clearly is no longer valid, it should be not considered of lesser relevance than that of the qualified medical evaluator." (*Minniear* v. *Mt. San Antonio Community College District, supra,* 61 Cal.Comp.Cases at p. 1061.) Allegations that the treating physician's position is out of date must be specific, in accord with Board rule 10606 (Cal. Code Regs., tit. 8, § 10606), and supported by evidence, not mere conjecture. (*Ibid.*)

 Keulen has more than met the requirements of the statute, as interpreted by *Minniear,* to rebut Doctor Mooney's position. Doctor Mooney stated that Keulen's complaints are consistent with the *attempted fusion* and that Keulen may be considered permanent and stationary as of January 11, 1996. But Doctor Mooney also stated, "There does, however, still appear to be a lucency in the area [of the attempted fusion]." Doctor Hentz agreed that "there is some persistent radiographic lucency," even though he felt clinically there was fusion. Accordingly, Doctor Mooney cautioned that "[s]hould [Keulen] develop recurrence of pain[,] . . . I would recommend a further imaging study of the quality of the fusion . . . ." Doctor Mooney's report regarding whether or not the joint had been fused was equivocal at best. Nonetheless, Doctor Mooney opined that as of January 11, 1996, Keulen's condition was permanent and stationary and only affected his thumb.

Keulen developed recurrent pain that became worse. Furthermore, he developed numbness in his fingers, a new symptom from that known at the time Doctor Mooney last saw and released him to work full time at his former position. As Doctor Mooney recommended, Doctor Schwartz ordered new X-rays again revealing "what appears to be a nonunion at the carpometacarpal joint of the thumb" consistent with Keulen's recurrent, increased pain and the development of ulnar neuropathy.

Doctor Schwartz's medical report provided specific evidence that Keulen's condition was not stable. The new evidence established that

Keulen's condition was neither permanent nor stationary. (See & cf. § 4065 [board is only entitled to choose between differing views on the parties' proposed *permanent* disability ratings].)

SCIF did not send Doctor Schwartz's report to Doctor Mooney for review, comment or rebuttal as to the additional evidence of neuropathy resulting from the injury. The evidence of Keulen's numbness and ulnar neuropathy in Doctor Schwartz's medical report is unrebutted and uncontested. It is further corroborated by Keulen's unrebutted, uncontested testimony. Keulen's testimony and reports of increased pain and numbness are consistent with Doctor Schwartz's medical report which provided medical evidence of the unfused joint. From this evidence the referee could not reasonably conclude that Doctor Schwartz's comprehensive medical evaluation simply presents another opinion on the same facts that "essentially disagrees with that of the treating physician . . . ."

There is no substantial evidence presented by respondents on either the development of numbness in Keulen's fingers or on his ulnar neuropathy. The medical evidence in Doctor Schwartz's report shows more than a different level of impairment. It shows an entirely new impairment suffered by Keulen as the result of the industrial injury and the failure to fuse the joint.

The facts and evidence here are distinguishable from the situation in *Minniear*. The reports of both the treating physician and Minniear's qualified medical examiner were similar. Based on postoperative magnetic resonance imaging results, medical examination and the subjective complaints of Minniear, both physicians found that he was precluded from engaging in heavy work or lifting. Both physicians submitted proposed permanent disability ratings that differed by only a few percentage points. Minniear admitted that " 'his condition is pretty much the same now as when he last saw [the treating physician].' " (*Minniear* v. *Mt. San Antonio Community College District, supra*, 61 Cal.Comp.Cases at pp. 1058-1959.)

The slight difference in opinion between the doctors about the degree of severity of Minniear's injury did not rebut the treating physician's medical evidence. (*Minniear* v. *Mt. San Antonio Community College District, supra*, 61 Cal.Comp.Cases at p. 1061.) The reports and Minniear's subjective complaints were also quite consistent. (*Id.*, at pp. 1061-1062.)

Here, however, the uncontested medical evidence presented by Doctor Schwartz's report, corroborated by Keulen's uncontested testimony, rebutted the presumption that the treating physician's findings are correct. (See

*Teledyne Ryan Aeronautical* v. *W.C.A.B.·(Ausen)* (1997) 62 Cal.Comp.Cases 832.) Doctor Schwartz documented that Keulen's condition continued to deteriorate so that Keulen suffered a different level of impairment; he suffered debilitating new traumas since Doctor Mooney last saw him.

"Upon reviewing the entire record in this case, we have concluded that the evidence relied upon by the board to discredit petitioner's uncontradicted testimony was insubstantial and cannot support its decision." (*Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451].) Generally, "the board 'must accept as true the intended meaning of [evidence] both uncontradicted and unimpeached.' " (*Id.*, at pp. 317-318.) "Upon the filing of a petition for reconsideration the board may direct the taking of additional evidence [section 5906] . . . ." (*Id.*, at p. 318; *King* v. *Workers' Comp. Appeals Bd.* (1991) 231 Cal.App.3d 1640, 1649 [283 Cal.Rptr. 98]; see also § 5701.)

The earlier medical opinions regarding the lucency of the prior X-rays were equivocal, and the new, uncontradicted medical evidence established a new pathology. If the Board had doubts about this evidence, it could have directed additional medical evidence. (*King* v. *Workers' Comp. Appeals Bd.*, *supra*, 231 Cal.App.3d at p. 1649, citing *Raymond Plastering* v. *Workmen's Comp. App. Bd.* (1967) 252 Cal.App.2d 748, 753 [60 Cal.Rptr. 860]; see also *Tyler* v. *Workers' Comp. Appeals Bd.* (1997) 56 Cal.App.4th 389, 392 [65 Cal.Rptr.2d 431] [WCJ and WCAB may "obtain additional evidence, including medical, at any time during the proceedings"] .) Instead, the Board relied on the outdated evidence proffered by the employer. Absent any evidence to the contrary, as here, the Board's decision upon reconsideration may not stand.

The order denying reconsideration is annulled, and the matter is remanded to the Board with directions to commence further proceedings forthwith consistent with this opinion. Petitioner shall recover his costs.

Stone (S. J.), P. J., and Coffee, J., concurred.

On October 14, 1998, the opinion was modified to read as printed above.