[No. B133678. Second Dist., Div. Three. May 18, 2000.]

TENET/CENTINELA HOSPITAL MEDICAL CENTER, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and CAROLYN RUSHING, Respondents.

**COUNSEL**

Lister, Martin, Thompson & Secia and David E. Lister for Petitioner.

John A. Mendoza for Respondent Carolyn Rushing.

Vincent Bausano for Respondent Workers' Compensation Appeals Board.

**OPINION**

**ALDRICH, J.—**

### INTRODUCTION

Employer, Tenet/Centinela Hospital Medical Center (the hospital), seeks a writ of review directing the Workers' Compensation Appeals Board (the WCAB) to vacate its order denying reconsideration of the findings and award of the workers' compensation judge (WCJ) based on the report of Edward G. Stokes, M.D. In pursuit of its petition, the hospital contends that Dr. Stokes's report is inadmissible because Ronald Glousman, M.D., was the

primary treating physician pursuant to California Code of Regulations, title 8, section 9785, subdivision (b) (section 9785).[1] We issued the writ. We hold that where the primary physician has declared the employee's injury to be permanent and stationary, released the employee to return to work, and prescribed no furthur doctor-involved treatment or visits, the employee was discharged and was thus required to comply with the provisions of section 9785, subdivision (b) and Labor Code sections 4061 and 4062, to change primary treating doctors. Accordingly, we annul the award of the WCAB.

### Factual and Procedural Background

Carolyn Rushing sustained an injury to her right knee on July 12, 1995, in the course of her employment with the hospital as a home health aide. Dr. Glousman treated Rushing continuously beginning in August 1995, performing surgery twice on her right knee and conducting follow-up care.

Dr. Glousman declared Rushing's injury to be permanent and stationary in October 1996, and imposed no work restriction. In his final report, dated January 23, 1998, Dr. Glousman declared Rushing's injury to be permanent and stationary. In the category of "Treatment Recommendations," Dr. Glousman wrote that Rushing "will continue on a *home exercise program.*" (Italics added.) Under the heading of "Future Medical Care," Dr. Glousman opined, "*I do feel that provisions should be made for future medical care.* With reasonable medical probability I feel the patient will have a flare-up of her underlying symptoms, requiring the need for *future* physician visits, anti-inflammatory medications, and possible physical therapy. The patient may also require knee surgery at a later date, if conservative methods do not alleviate her recurrent knee pain." (Italics added.)

Rushing objected to Dr. Glousman's permanent disability opinion. As Rushing was not represented at the time, the hospital followed the requirements of Labor Code section 4061, subdivision (d), and provided her with a three-physician panel. Rather than select a qualified medical examiner pursuant to Labor Code sections 4061 and 4062, Rushing retained an attorney and began treatment with Dr. Stokes, five months after Dr. Glousman's final report issued.

At her hearing before the WCJ, Rushing relied on the report of Dr. Stokes as her primary treating doctor, and on the rebuttable presumption contained

---

[1] Throughout these proceedings, the parties and the WCAB have relied on California Code of Regulations, title 8, section 9785.5, subdivision (c), which was in effect at the time of the decision. Section 9785.5 was repealed effective January 1, 1999. Yet the language now appears virtually unchanged in section 9785, subdivision (b) and so, for purposes of clarity, we will cite section 9785.

in Labor Code section 4062.9,[2] of the correctness of Dr. Stokes's opinion. The hospital objected to Dr. Stokes's report, promoting instead that of Dr. Glousman. The hospital argued that Rushing was not allowed to select a new primary treating physician based on section 9785, subdivision (b), which precludes a change of treating doctor where the primary treating physician has discharged the employee from *further* treatment and there is a dispute concerning the need for *continuing* treatment. The hospital further insisted that Dr. Stokes's report was inadmissible under Labor Code sections 4061 and 4062. These sections of the Labor Code prescribe the procedures to follow when an employee is dissatisfied or disagrees with the treating physician's medical determination.

The WCJ effectively ruled that Dr. Stokes was the primary treating physician, rationalizing that Rushing was entitled to change treating physicians when *future* medical care is warranted. Because Dr. Glousman stated that Rushing required *future* medical treatment, the WCJ concluded, Rushing had not been discharged from active care, with the result that she was free to and did validly change treating physicians.

The WCAB denied the hospital's motion for reconsideration affirming the views of the WCJ. The WCAB ruled that because Dr. Glousman had recommended "*continued and further* medical treatment" (italics added), Rushing had not been discharged from active care when she exercised her right to seek further treatment with Dr. Stokes. Thus, the WCAB ruled Labor Code sections 4061 and 4062 were not implicated.

The hospital filed the instant petition for writ of review, seeking an order directing the WCAB to vacate its order denying reconsideration. We issued the writ.

### DISCUSSION

1. *Standard of review.*

When considering a petition for writ " ' "[t]his court must determine whether the evidence, when viewed in light of the entire record, supports the award of the WCAB. This court may not reweigh the evidence or decide disputed questions of fact. [Citations.] However, this court is not bound to

[2]Labor Code section 4062.9 provides, "In cases where an additional comprehensive medical evaluation is obtained under Section 4061 or 4062, the findings of the treating physician are presumed to be correct. This presumption is rebuttable and may be controverted by a preponderance of medical opinion indicating an [*sic*] different level of impairment. However, this presumption shall not apply where both parties select qualified medical examiners."

accept the WCAB's factual findings if determined to be unreasonable, illogical, improbable or inequitable when viewed in light of the overall statutory scheme. [Citation.] Questions of statutory interpretation are, of course, for this court to decide. [Citations.]"' [Citations.]" (*Keulen v. Workers' Comp. Appeals Bd.* (1998) 66 Cal.App.4th 1089, 1095-1096 [78 Cal.Rptr.2d 500].)

2. *Rushing was discharged from Glousman's care and could not change physicians.*

 Section 9785, subdivision (b) provides, "There shall be no more than one primary treating physician at a time. Where the primary treating physician discharges the employee from *further* treatment and there is a dispute concerning the need for *continuing* treatment, no other primary treating physician shall be identified unless and until the dispute is resolved. If it is determined that there is *no further need* for *continuing* treatment, then the physician who discharged the employee shall remain the primary treating physician. If it is determined that there *is further need* for *continuing* treatment, a new primary treating physician may be selected." (Italics added.)

Section 9785, subdivision (b)'s restriction on changing treating physicians applies when the "primary treating physician discharges" the employee. Stated differently, the injured employee is entitled to change treating doctors until the primary treating doctor "discharges" that worker. Although Dr. Glousman's report does not use the term "discharge," under the facts here, we conclude Rushing was discharged and therefore was precluded from seeking treatment from Dr. Stokes.

First, the WCJ's rationale that Rushing was entitled to change her primary treating doctor because "[t]he applicant may change treating physicians when *future medical [treatment]* is warranted" (italics added), misinterprets section 9785, subdivision (b). Section 9785 uses the terms "continuing treatment" and "further treatment"; not "future" treatment. The terms are not interchangeable. "Continuing" means "constant," "needing no renewal: lasting, enduring." (Webster's 3d New Internat. Dict. (16th ed. 1971) p. 493.) "Further" indicates "going or extending beyond what exists." (*Id.* at p. 924.) The terms "continuing" and "further" denote a treatment protocol that is ongoing, uninterrupted and unceasing. By contrast, "future" is "existing or occurring at a later time." (*Id.* at p. 926.) Hence, "future" medical care suggests medical attention which would be required at a later date. Here, Dr. Glousman discussed care which may be needed in the future but made no comments about *ongoing* doctor-involved treatment.

Second, the WCAB has interpreted its own regulation consistent with our view. In a factually similar case, *Roacho v. Workers' Comp. Appeals Bd.* (1998) 63 Cal.Comp.Cases 874 (*Roacho*), Dr. Laughlin diagnosed the employee as permanent and stationary and found that the employee did not need *further* treatment, but opined that the employee "would need *future* medical care in the form of short courses of physical therapy upon acute exacerbation, *and not on an ongoing basis.*" (*Id.* at p. 875, italics added.) The following month, the employee sought treatment from Dr. Hunt. The WCJ ruled that Dr. Laughlin remained the employee's treating physician because he had discharged the employee from his care, and found the need for " 'continuing medical treatment was, at best, extremely minimal.' " (*Id.* at p. 876.) The WCAB adopted the WCJ's report and denied reconsideration.[3]

Hence, *Roacho* reveals that the WCAB has in the past determined, where the treating doctor has declared the employee permanent and stationary and released the employee to return to work, while indicating there may be a need for *future* medical attention to flare-ups, that the employee is precluded from selecting another treating physician. ▉▉▉ The conclusion in *Roacho* is persuasive authority here for the proposition that an employee who no longer needs continuing treatment is considered to have been discharged, even where the physician articulates a need for future medical treatment.[4]

▉▉ Here, *Dr. Glousman repeatedly found Rushing's injuries to be permanent and stationary and released her to return to work. The doctor scheduled no additional visits and prescribed no doctor-involved treatment.* Dr.

---

[3]The WCJ in *Roacho* stated that pursuant to section 9785, where the primary treating physician has discharged the employee from further treatment but there is a dispute about the need for further medical care, the issue must be resolved by the WCJ. While we agree with the result and the rationale of *Roacho*, we disagree with this statement for it ignores sections 4061 and 4062 of the Labor Code, which set forth specific procedures to follow when there is a dispute about the need for continuing treatment. (See *post.*)

[4]Although decisions in California Compensation Cases where writs of review were denied "have no stare decisis effect as to the appellate court denial [citations], they are citable authority as to the holding of the [WCAB] [citations]." (*Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 827, fn. 7 [45 Cal.Rptr.2d 197].) Furthermore, "[a] board panel decision reported in the California Workers' Compensation Reporter is regarded as a properly citable authority, particular[ly] on the issue of contemporaneous administrative construction of statutory language. [Citation.]" (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1995) 37 Cal.App.4th 675, 683, fn. 4 [43 Cal.Rptr.2d 660].)

Rushing prefers *McNorton v. Workers' Comp. Appeals Bd.* (1997) 62 Cal.Comp.Cases 760, where the WCAB came to a conclusion directly opposite from that in *Roacho*. However, *McNorton* is not published and it is distinguishable on its facts. The employee in *McNorton* had not been found to be permanent and stationary and had not otherwise been discharged from treatment before she elected to change primary treating physicians.

Glousman's opinion that in all reasonable medical probability Rushing would have flare-ups requiring medical attention in the *future,* does not alter the fact that *ongoing* medical treatment had been terminated. (*Roacho, supra,* 63 Cal.Comp.Cases at pp. 875-876.) A patient cannot have future treatment unless the current continuing treatment has ceased. Hence, Dr. Glousman *discharged* Rushing from *continuing treatment* as of January 23, 1998.

### 3. *Rushing failed to comply with Labor Code sections 4061 and 4062.*

█ Because Rushing was discharged from Dr. Glousman's care and disagreed with the physician's determination, she was required to comply with Labor Code sections 4061 and 4062 before changing physicians. Where the employee has been discharged and there is a dispute, "no other primary treating physician shall be identified unless and until the dispute is resolved." (§ 9785, subd. (b).) It is apparent that a dispute about the need for continuing treatment existed: Rushing's disagreement with Dr. Glousman's January 1998, conclusions about her treatment prompted her to consult Dr. Stokes. Indeed, the dispute gave rise to the instant petition.

When there are disputes about the appropriate medical treatment, temporary or permanent disability, vocational rehabilitation, the disability rating, or the need for continuing medical care, Labor Code section 4061 or 4062 applies. (*Keulen v. Workers' Comp. Appeals Bd., supra,* 66 Cal.App.4th at p. 1096.) Sections 4061 and 4062 of the Labor Code establish the procedures for resolving such disagreements. Rushing was, therefore, required to follow the Labor Code sections 4061 and 4062 procedures to resolve the dispute before she could legitimately select a new primary treating physician.

In summary, the WCJ's conclusion and findings that "[Rushing] may change treating physicians when *future medical* [*treatment*] is warranted" (italics added), is clearly contrary to the words of the regulations, and ignores the purpose of Labor Code sections 4061 and 4062. █ The requirement that we give great weight to the WCAB's interpretation of its regulations does not apply if it is clearly erroneous. (*Ralphs Grocery Co. v. Workers' Comp. Appeals Bd., supra,* 38 Cal.App.4th at p. 828.) As Dr. Glousman found that Rushing's condition was permanent and stationary, released her to return to work without restrictions, and arranged for no continuing doctor-involved treatment, he was Rushing's primary treating physician and, because she disputed the doctor's findings, Rushing was not entitled to seek medical treatment from Dr. Stokes under section 9785, without complying with the provisions of Labor Code sections 4061 and 4062.

### 4. *The award must be annulled.*

The hospital correctly contends that the WCAB's order and opinion denying reconsideration must be annulled because it relies on factual misstatements. Also, as we have just analyzed, the WCAB incorrectly interpreted its own regulations. "[W]here, as here, the WCAB misstates the evidence and specifies erroneous reasons, its decision must be annulled. [Citation.]" (*Guzman v. Workers' Compensation Appeals Bd.* (1984) 158 Cal.App.3d 190, 195 [204 Cal.Rptr. 527].)[5]

### DISPOSITION

The June 8, 1999, order of respondent Workers' Compensation Appeals Board denying Tenet/Centinela Hospital Medical Center's petition for reconsideration is annulled; and the matter is remanded for further proceedings consistent with the views expressed herein.

Klein, P. J., and Croskey, J., concurred.

Petitioner's petition for review by the Supreme Court was denied August 9, 2000. Mosk, J., was of the opinion that the petition should be granted.

---

[5]Rushing seeks an award of supplementary attorney fees predicated on the assertion that there was no reasonable basis for this petition for review. The request is denied.