[No. B143940. Second Dist., Div. Four. June 7, 2001.]

PINKERTON, INC., et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and TINISHIA
SAMUEL, Respondents.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV through VIII of Discussion.

COUNSEL

Law Offices of Peter R. Nelson and Peter R. Nelson for Petitioners.

No appearance for Respondent Workers' Compensation Appeals Board.

Hinden, Grueskin & Aguirre and Barry Hinden for Respondent Tinishia Samuel.

OPINION

**EPSTEIN, Acting P. J.**—Pinkerton, Inc.,[1] seeks review of an order of the Workers' Compensation Appeals Board (Board) denying its petition for reconsideration and affirming an award in favor of Tinishia Samuel. Pinkerton contends that it gave sufficient notice of change of the primary treating physician. While the statute and regulation are not clear as to what notice is required, we conclude there was no proper notice in this case. We affirm the Board's order.

Samuel asks that we order Pinkerton to pay her attorney's fees and costs incurred in responding to its petition.

Based on our review of the record and applicable law, we deny Samuel's request for fees and costs.

## FACTUAL AND PROCEDURAL SUMMARY

Samuel was employed as a security guard by Pinkerton. On April 27, 1998, she was injured at work when she slipped and fell on a waxed floor. She injured her back, neck, shoulder, right wrist, right knee and both ankles.[2] Pinkerton prepared a preprinted document entitled "Notice to Doctor" to refer Samuel to Santa Monica Bay Physicians. The first line simply stated: "To: Treating Doctor (PTP)." No physician was named or otherwise identified. The next day, however, Dr. Chris Effimoff of Santa Monica Bay

---

[1] Pinkerton, Inc., is permissibly self-insured for workers' compensation. Its claims administrator, RSKCo Claims Services, is named as a petitioner in the case caption. That entity makes no separate contentions in this proceeding.

[2] In addition to filing a workers' compensation claim, Samuel also commenced a superior court action for negligence against the floor waxing company. That case was settled, and Samuel dismissed her complaint with prejudice. Neither the settlement agreement nor the ensuing judgment was submitted as evidence in the workers' compensation action. The judgment, however, was filed with the petition for reconsideration. Because Pinkerton did not argue that the judgment was newly discovered evidence, the Board properly ignored it.

Physicians examined Samuel. In his report entitled "Doctor's First Report of Work Injury," Dr. Effimoff diagnosed multiple contusions and sprains. He prescribed pain medication and recommended that she stay at home for two days to rest. Samuel was directed to return in three days for further evaluation to determine whether she needed physical therapy.

On May 1 and 12, 1998, Samuel received further treatment at Santa Monica Bay Physicians, this time from a different physician. Samuel was not discharged from treatment. Dr. Effimoff's report was not served on Samuel.

Samuel retained an attorney. ▆▆▆ On May 15, 1998, within 30 days of the injury, the attorney sent a letter of representation to Pinkerton asking for a change of treating physician to Westside Wilshire Medical Group, pursuant to Labor Code section 4600 or 4601, as applicable.[3] (All statutory references are to this code.)

A week later, on May 22, 1998, Pinkerton prepared a preprinted "Notice to Doctor" for an appointment at U.S. Healthworks. This form was similar to the "Notice to Doctor" that referred Samuel to Santa Monica Bay Physicians. The notice does not indicate whether the appointment was in response to Samuel's request for a change of treating physician. Nor does it expressly specify any person or entity as a recipient. It bears the signature of a Pinkerton supervisor and the same date as that of Samuel's appointment at U.S. Healthworks. At some point, Samuel became aware of the appointment.

Samuel was examined by Dr. Mark Newman at U.S. Healthworks on May 22, 1998. In his report based on that examination, entitled "Doctor's First Report of Occupational Illness or Injury," Dr. Newman found Samuel's complaints to be grossly embellished and that she was permanent and stationary. He discharged her from further treatment and stated she could return to work without restriction.

Nevertheless Samuel was again examined by Dr. Newman a week later. In a report dated July 5, 1998 entitled "Primary Treating Physician's Permanent & Stationary Report," Dr. Newman reiterated that Samuel had been

---

[3]The employer controls treatment for 30 days after the injury. The employee may request a one-time change of the treating physician from the employer during that period. (Lab. Code, §§ 4600, 4601; *Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820 [45 Cal.Rptr.2d 197].) The employer must respond to the request within five working days. After 30 days, the employee may change physicians as desired, within reason (*Ralphs Grocery Co., supra,* at p. 829) and within the limitations of sections 4061 and 4062 as explained in *Tenet/Centinela Hospital Medical Center v. Workers' Comp. Appeals Bd.* (2000) 80 Cal.App.4th 1041 [95 Cal.Rptr.2d 858].

discharged from treatment on May 22 and 29 and could return to her full work duties. He found she had no permanent disability.

Neither the first nor the follow-up report by Dr. Newman was served on Samuel's attorney until July 9, 1998, a date subsequent to her examination by a physician she selected, Dr. Lana Geyber.

In a letter to Samuel dated May 28, 1998, the Pinkerton claims administrator, Mary Johnson, informed her that she could object to Dr. Newman's findings and was entitled to obtain an expert medical evaluation from a qualified medical examiner. Dr. Newman's report of May 22, 1998, purportedly was attached to that letter. The letter and attached report were not served on Samuel's attorney of record.

In mid-June 1998, Johnson telephoned Samuel and informed her that Dr. Newman had discharged her from treatment and that she needed to obtain an expert evaluation. Johnson also left a message for Samuel's attorney informing him of the need to attempt to agree on a medical expert in the event Samuel intended to object to Dr. Newman's decision.

On June 15, 1998, Samuel was examined by Dr. Geyber of Westside Wilshire Medical Group, the provider she had selected. Dr. Geyber noted Samuel exhibited pain and limited range of motion. She diagnosed Samuel as having cervical, lumbar, chest, and right wrist strains and strain to both ankles. She recommended that Samuel be treated with muscle relaxing medication, physical therapy, and an ankle brace.

On June 25, 1998, Dr. Geyber served her report of June 15, 1998, entitled "Initial Primary Treating Physician Examination and Report" on both Pinkerton and on Samuel's attorney. On June 30, 1998, Samuel's attorney served Dr. Geyber's report on Mary Johnson, Pinkerton's claims administrator.

In September 1998, Dr. Geyber referred Samuel to Drs. Furman and Baybrook, respectively, for neurological and orthopedic consultations. In December 1998, Dr. Geyber referred Samuel to Dr. Habibi, a neurosurgeon, to be evaluated for surgery. Dr. Habibi performed surgery on Samuel's low back in January 1999.

A hearing before the workers' compensation judge was held in November 1998 to determine whether continuing medical treatment was necessary, and to determine the primary treating physician. Samuel was the only witness. At that hearing, Pinkerton objected to any evidence from Dr. Geyber because, it claimed, Dr. Newman was the primary treating physician. Samuel argued

that Dr. Geyber was the primary treating physician. Each party claimed the other had failed to comply with the objection requirements of section 4061.[4] The issue whether the initial appointment with Dr. Newman was in response to Samuel's request for a change of treating physician was not raised.

The judge found Dr. Geyber was the primary treating physician and, hence, that Dr. Newman's discharge of Samuel from treatment had no effect. The judge also found that because Samuel needed further treatment, the section 4061 issues were moot.

The Board granted Pinkerton's petition for reconsideration. Pinkerton asserted it had referred Samuel to Dr. Newman in response to Samuel's request for a new treating physician. It pointed out that Samuel attended the appointment, and argued that it had complied with the service and identification requirements for the primary treating physician contained in former California Code of Regulations, title 8, section 9785.5, subdivision (b).[5] As evidentiary support, it relied on the letter of May 28, 1998, served on Samuel, and on the service of Samuel's attorney with Dr. Newman's reports on July 9, 1998.

The Board found that it was not clear that Pinkerton had referred Samuel to Dr. Newman in response to her request for a change of treating physician. It also found that neither party had complied with the requirements of former section 9785.5, subdivision (b). In Pinkerton's case, the "PTP" designation it had inserted before Dr. Effimoff's name was insufficient identification, and

---

[4]Section 4061, subdivision (c) provides that if the parties cannot agree to permanent disability assessment or a need for continuing medical care per the treating physician's evaluation, the objecting party must object and attempt to agree on an agreed medical examiner before selecting his or her own medical expert to conduct a comprehensive medical evaluation for rebuttal purposes. (*Keulen v. Workers' Comp. Appeals Bd.* (1998) 66 Cal.App.4th 1089, 1096 [78 Cal.Rptr.2d 500].)

[5]Since Samuel's injury occurred in 1998, this matter is governed by the regulations in effect at that time, rather than the regulations as recodified in 1999.

Former section 9785.5, subdivision (b) provided: "Where the primary treating physician has been selected by the employer . . . the primary treating physician shall be identified in a report to the employer and to the employee or the employee's representative. Where the employee has chosen the primary treating physician, he or she shall be identified in the physician's initial treatment plan submitted in accordance with Section 9785. If there is a change in the initial designation by an employer, employee, or Health Care Organization, the new primary treating physician shall be identified in a subsequent report to the employer and the employee or the employee's representative."

Former section 9785.5, subdivision (b) was repealed January 1, 1999, and recodified with substantially the same provisions in CCR section 9785. (See *Paula Ins. Co. v. Workers' Comp. Appeals Bd. (Vargas)* (2000) 65 Cal.Comp.Cases 432, 433 and *California Comp. Ins. Co. v. Workers' Comp. Appeals Bd. (Garcia)* (2000) 65 Cal.Comp.Cases 535, 537.)

All further references to regulations are to title 8 of the CCR.

it was not clear that Dr. Effimoff's report had been served on Samuel. Additionally, neither the "Notice to the Doctor" referring Samuel to U.S. Healthworks nor Dr. Newman's first report of injury identified Dr. Newman as the primary treating physician. Samuel had not complied, because it was not clear that Pinkerton had been served with Dr. Geyber's report.

The Board remanded the matter to the judge to determine whether Dr. Effimoff was the primary treating physician.

On July 7, 1999, Dr. Geyber declared Samuel permanent and stationary and determined there was no need for immediate further treatment but provided for future treatment as needed. Dr. Geyber also described significant permanent disability.

Following a new hearing in late July 1999, the judge again found that Dr. Geyber was the primary treating physician, and that Dr. Effimoff was not because he had not complied with section 9785.5 in that he had failed to identify himself as the primary treating physician and to serve his report.

The judge also found Dr. Newman was not the primary treating physician. The reasons were that, although Samuel received Dr. Newman's May 22, 1998 report along with Pinkerton's letter of May 28, 1998, that report did not identify Dr. Newman as the primary treating physician nor had the report been served on Samuel's attorney of record.

No evidence was presented on the issue of whether the referral to Dr. Newman was in response to Samuel's request for change of treating physician. The judge made no finding on that issue.

Pinkerton again petitioned for reconsideration on the same issues as before. This time, it asserted that the reference to Dr. Newman was in response to Samuel's request for change of treating physician, but it did not further develop this point. Pinkerton also argued that the workers' compensation proceeding should be dismissed because the civil judgment in Samuel's suit against the floor waxing company was res judicata (or a retraxit) on the issue of employer liability foreclosing Samuel from receiving medical treatment compensation in this action.

The Board denied the new petition and adopted the judge's report as its own decision. In his report, the judge explained that Dr. Effimoff did not qualify as the primary treating physician under section 9785.5, because his report had not been served on Samuel. Dr. Newman was not the primary

treating physician, because he did not identify himself as such until his report of July 5, 1998, a date after Dr. Geyber already "had taken control."

The judge also explained that Samuel was not estopped from denying that Dr. Newman was the treating physician because Pinkerton had failed to notify her that its reference to that physician was in response to her request for change of treating physician. As a result, the judge concluded Samuel was entitled to select the treating physician of her choice. As we have discussed, she selected Dr. Geyber.

The judge found that Dr. Geyber's June 15, 1998 report had been properly served and that Dr. Geyber identified herself as the primary treating physician, thereby becoming the primary treating physician. The judge further found that Pinkerton waived any objection to Dr. Geyber as the primary treating physician because it had not objected to the admission of Dr. Geyber's reports.

The judge concluded that dismissal of the civil lawsuit against the floor waxing company did not deprive the Board of jurisdiction, but he did not address the effect of the settlement agreement. Finally, the judge also concluded that any issue involving section 4061 (concerning Samuel's failure to object to Dr. Newman's opinion) had not been raised and, therefore had been waived by Pinkerton.

Pinkerton filed a petition for review in this court. Samuel filed an answer to the petition. The Board did not file a response.

By letter, we invited the Board to address the effect of *Tenet/Centinela Hospital Medical Center v. Workers' Comp. Appeals Bd.*, supra, 80 Cal.App.4th 1041, which was filed after Pinkerton's petition. We treat the positions of the parties on that issue in the Discussion portion of this opinion.

DISCUSSION

I

■ Pinkerton contends that Dr. Newman was Samuel's primary treating physician because he was supplied in response to Samuel's request for a change of treating physician. This contention is not supported by the record.

Section 4601 establishes the right of the employee to request a change of treating physician and simply requires that the "employer . . . provide the employee an alternative physician, . . . [within] five working days from the date of the request." However, CCR section 9781, the regulation implementing section 4601, requires "[t]he employer shall respond [to the employee's request for change of physician] promptly, and in the manner best calculated to reach the employee, and in no event later than 5 working days from receipt of said request. . . . [T]he employer shall advise the employee of the name and address of the alternative physician, . . . the date and time of an initial scheduled appointment, and any other pertinent information. The employer may confirm its response in writing."

Pinkerton argues that it complied with the notification requirement by its May 22, 1998 "Notice to Doctor." That notice was sufficient, it claims, because Samuel did appear within the five-day period at U.S. Healthworks, where she was examined by Dr. Newman.

The judge found that Pinkerton did not provide Dr. Newman in response to Samuel's request for change of treating physician. This is an implicit finding that Pinkerton had not complied with the notification requirements of section 4061 and regulations section 9781.[6]

Pinkerton's "Notice to Doctor" does not satisfy the notice requirements of section 4601 and CCR section 9781. It was addressed to an unnamed physician. Since no recipient was designated, it is not clear to whom the notice was to be provided. The notice purports to be sent to Samuel or to an unidentified "Treating Doctor (PTP)."

Most important, the notice says nothing about being in response to Samuel's request for a change of treating physician. At most, it is a direction that she report to a particular health care facility. Indeed, Pinkerton's claims administrator does not address whether the referral to Dr. Newman was provided in response to Samuel's request for change of treating physician.

On this record, the judge and the Board properly concluded that Dr. Newman was not provided in response to Samuel's request for a change of treating physician and Samuel was entitled to treatment from a physician of her choosing.

---

[6]When the Board, as here, has adopted the judge's report, we review the judge's findings. (*Painter v. Workers' Comp. Appeals Bd.* (1985) 166 Cal.App.3d 264 [212 Cal.Rptr. 354].)

At oral argument, for the first time, Pinkerton, argued that section 4601 does not provide procedural guidelines for notification of the change of treating physician. As a result, it argued any new treating physician to whom the applicant is referred within the five-day limitation satisfies the notice requirement of section 4601. Pinkerton did not raise this issue below, and, therefore is not entitled to pursue it on appeal. Even if the point were cognizable, it would not succeed.

Section 4601 does not set out any procedural requirements, but section 9781 of the regulations requires the employer to respond promptly in the manner best calculated to reach the employee. Considerations of fairness and efficiency dictate that the better practice is to serve the employee with the notice, and if the employee is represented, the notice should be served on the employee's representative. Good practice is not necessarily compelled practice. But since designation of the primary treating physician is a matter of substantial legal significance in the development of the case, the notice must make it clear that the designated alternative physician is the primary treating physician. It did not, and is therefore deficient.

Although our conclusion on this issue is dispositive, we briefly discuss Pinkerton's remaining issues.

II

Pinkerton contends that Samuel was foreclosed from obtaining further treatment because she did not first object to Dr. Newman's report and obtain a rebuttal report in compliance with section 4061.[7] We do not agree. First, no objection or rebuttal report was necessary because Dr. Newman was not Samuel's primary treating physician. Section 4061 makes it clear that these steps are invoked only in response to a report from a primary treating physician.

The judge found that Dr. Newman was not the primary treating physician because (1) Dr. Geyber had "taken control" before Dr. Newman identified himself as the primary treating physician in his July 5, 1998 reports, and (2) Dr. Newman's report was not served on Samuel's attorney, who was retained prior to Dr. Newman's initial examination of Samuel.

---

[7]Contrary to the judge's finding, this issue was not waived. It was raised in pretrial and trial documents and was litigated. (*National Convenience Stores v. Workers' Comp. Appeals Bd.* (1981) 121 Cal.App.3d 420, 425 [175 Cal.Rptr. 378].)

The judge, the Board and the parties focus their principal dispute over whether the primary treating physician must identify himself or herself as such. Pinkerton argues the treating physician is not required to say that he or she is the "primary treating physician." Samuel argues that Dr. Newman's failure to identify himself as the primary treating physician is fatal, citing *Norrell Temporary Services v. Workers' Comp. Appeals Bd.* (1998) 63 Cal.Comp.Cases 206.

The governing statutes and regulations are ambiguous on this point. But the Board consistently has concluded in opinions that such identification is required. (See, e.g., *Norrell Temporary Services v. Workers' Comp. Appeals Bd., supra,* 63 Cal.Comp.Cases at p. 207; *California Comp. Ins. Co. v. Workers' Comp. Appeals Bd., supra,* 65 Cal.Comp.Cases 535, 536.) The Board also has concluded that the primary treating physician's report must be served on the employee. (*Norrell Temporary Services, supra,* 63 Cal.Comp.Cases at p. 207; *California Comp. Ins. Co., supra,* 65 Cal.Comp.Cases 535, 536.) Neither *Norell,* nor *California Comp. Ins. Co.,* decided whether service on the employee's attorney is required.

The Board relies on its interpretation of former section 9785.5, subdivision (b), which provided, in pertinent part that: "[w]here the primary treating physician has been selected by the employer . . . the primary treating physician shall be identified in a report to the employer and to the employee or the employee's representative."[8]

As the constitutional agency charged with enforcement and interpretation of the Workers' Compensation Law, the Board's contemporaneous construction of that law, while not necessarily controlling, is entitled to great weight, and courts will not depart from its construction unless it is clearly erroneous or unauthorized. (*Cannon v. Industrial Acc. Comm.* (1959) 53 Cal.2d 17, 22 [346 P.2d 1]; *Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633, 638 [211 Cal.Rptr. 683].)

The plain language of the regulation does not address how the primary treating physician is to be identified, and particularly whether that person must state his or her name and qualifications, or that he or she is the primary treating physician, or both. Related statutes and regulations are of little assistance. They do no more than indicate that the term "primary treating physician" is administrative shorthand for describing the physician who is

---

[8]An employee's representative may be an attorney or any other agent. (§ 5700.)

primarily responsible for the injured worker's medical treatment. (See, e.g., § 4061.5 [duties of primary treating physician]; former CCR, § 9785.5, subd. (a) [primary treating physician defined].)

The regulation also is ambiguous as to whether service of the primary treating physician's report on the attorney of a represented employee is required because of the disjunctive word, "or." However, sections 4061 and 4062, which specify different times in which represented and unrepresented employees may object to the primary treating physician's report (see *Strawn v. Golden Eagle Ins. Co.* (2000) 28 Cal. Workers' Comp. Rptr. 105), seem to require service of the report on a represented employee's attorney.

Thus, even according proper weight to the Board's rules, they are not sufficiently clear to be dispositive of the issue. The Board may wish to consider amending its regulations to say what it means.[9]

### III

*Tenet/Centinela Hospital Medical Center v. Workers' Comp. Appeals Bd.,* *supra,* 80 Cal.App.4th 1041, is not controlling. In that case the court concluded that the medical report terminating treatment was properly served on the unrepresented employee long before she obtained an attorney and began further medical treatment with a new physician. That did not occur here. In this case, Samuel was represented by an attorney prior to service of Dr. Newman's first report. Moreover, Dr. Newman was not identified as the primary treating physician in his first report. By the time Dr. Newman identified himself as such, in his second report, and served it on Samuel's attorney, Samuel already had begun treating with Dr. Geyber. That physician had already served her report on the employer and the employer's claims administrator, and had clearly identified herself as the primary treating physician.

### IV-VIII*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

[9]The requirement that the employer-designated medical report be served on the employee or the employee's representative did not survive recodification of former CCR section 9785.5, subdivision (b). The current regulation, CCR section 9785, simply requires the treating physician to serve a report only on the claims administrator.

*See footnote, *ante,* page 1019.

## DISPOSITION

The Board's order denying reconsideration is affirmed. Samuel's request for fees and costs is denied.

Hastings, J., and Curry, J., concurred.