[No. F038425. Fifth Dist. Mar. 22, 2002.]

SHELLY GEE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, LUCKY STORES et al., Respondents.

**COUNSEL**

Moorad and Clark and Adam J. Stewart for Petitioner.

Vincent Bausano for Respondent Workers' Compensation Appeals Board.

Hanna, Brophy, McLean, McAleer & Jensen and Sherry L. Newton for Respondents Lucky Stores and Kemper National Insurance Company.

**OPINION**

**VARTABEDIAN, Acting P. J.**—Shelly Gee (Gee) petitions this court by a writ of review challenging the decision of the Workers' Compensation Appeals Board (WCAB). The WCAB weighed the relevant medical evidence without applying the treating physician's presumption of correctness under Labor Code[1] section 4062.9 because the parties failed to raise the presumption as an issue by the time of trial. We find the presumption operative as a matter of law whenever the underlying facts meet the presumption's conditions. We therefore conclude the WCAB erred by not applying the presumption and remand the case for reconsideration.

### FACTUAL AND PROCEDURAL HISTORY

Gee worked as a supermarket clerk for Lucky Stores, Inc. (Lucky) when she filed three separate workers' compensation claims alleging work-related injuries to her head, neck, shoulders, wrists, and upper extremities. Gee's claims included a cumulative injury through November 20, 1996, a specific injury on February 13, 1998, and a cumulative injury through February 17, 1998.[2]

Gee initially sought treatment for her upper extremity and wrist injuries with Dr. Sharon Nichols in December 1996. Dr. Nichols diagnosed Gee with

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

[2] "Under the workers' compensation statute, there are two distinct types of industrial 'injuries.' A compensable injury can be either 'specific' or 'cumulative.' (§ 3208.1.) A cumulative injury is one which results from repetitive events, occurring during each day's work, which in combination cause any disability or need for medical treatment." (*Western*

right carpal tunnel syndrome and declared her "permanent and stationary"[3] on January 6, 1998. However, Gee's condition deteriorated over the next month and Dr. Nichols recommended she visit a workers' compensation qualified medical evaluator (QME) to determine whether her new symptoms were industrially related.

Following the procedures established for injured workers unrepresented by counsel, Gee selected Dr. Patrick N. Rhoades, as her QME from a panel of three physicians offered by the Industrial Medical Council (IMC).[4] (§§ 139.2, 4061, subd. (d), 4062, subd. (b).) Dr. Rhoades's April 23, 1998, QME report concluded Gee was not yet permanent and stationary and that she required additional medical attention. Over the next two years, Gee continued treatment with Dr. Rhoades and she apparently designated him as her "treating physician."[5]

Gee subsequently retained counsel to represent her in her disability claims. In November 1999, at Lucky's request, a workers' compensation administrative law judge (WCJ) ordered Gee to attend a medical examination with Dr. Graham Bray. After examining Gee and reviewing her medical records, Dr. Bray prepared a February 14, 2000, QME report concluding Gee suffered a cumulative trauma injury to her wrists through November 20, 1996, and a second mild cumulative trauma injury to her neck and shoulders through February 17, 1998. Dr. Bray found no indication Gee sustained a specific February 13, 1998, injury.

The parties were unable to resolve Gee's disability claims on their own; therefore, in June and August 2000, Lucky filed declarations of readiness to proceed with the WCAB requesting findings regarding Gee's level of permanent disability, future medical treatment, apportionment, and whether her headaches arose out of and in the course of employment. The declarations

---

*Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 234 [20 Cal.Rptr.2d 26].)

[3] "The right to permanent disability compensation does not arise until the injured worker's condition becomes 'permanent and stationary.' " (*LeBoeuf v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 238, fn. 2 [193 Cal.Rptr. 547, 666 P.2d 989].) "A disability is considered permanent after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time." (Cal. Code Regs., tit. 8, § 10152.)

[4] The IMC is established under section 139. (See generally 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed., Tancor edit., 2001) Workers' Compensation System, § 1.15, p. 1-57.) Among its duties, the IMC appoints QME's. (§ 139.2, subd. (a).)

[5] The "treating physician" is primarily responsible for managing the injured employee's care and who renders opinions on all medical issues necessary to determine the employee's eligibility for compensation. (§ 4061.5; Cal. Code Regs., tit. 8, § 9785, subd. (d).)

did not list as an issue the treating physician's presumption of correctness under section 4062.9.

In September 2000, the WCJ conducted a mandatory settlement conference (MSC) where the parties set forth the relevant issues in a pretrial conference statement. The statement did not refer to the treating physician's presumption, but indicated: "The primary treating physician is disputed. [Applicant] claims Dr. Rhoades." Lucky also objected to admitting Dr. Rhoades's medical reports, claiming he inappropriately treated Gee after first serving as her QME.

The matter proceeded to trial in November 2000. According to the WCJ, the parties never referred to the treating physician's presumption or to section 4062.9. However, the WCJ's summary of trial evidence again states the "[t]he identity of the primary treating physician is disputed, applicant claiming Dr. Rhoades." At the conclusion of trial, the WCJ allowed the parties to submit posttrial briefs addressing whether Dr. Rhoades could legally perform the duties of both a QME and a primary treating physician and whether his medical reports constituted substantial evidence.

In March 2001, the WCJ found Gee properly exercised her right to select Dr. Rhoades as her primary treating physician, despite his former designation as her QME. Without referring to the treating physician's presumption of correctness, the WCJ concluded Lucky's QME, Dr. Bray, was more "credible, reasonable, and persuasive" than Dr. Rhoades. Accordingly, the WCJ adopted Dr. Bray's conclusion that Gee only suffered two cumulative injuries to her wrists, neck, and shoulders; that her headaches were non industrial; and that she became permanent and stationary on May 17, 1998. The WCJ awarded Gee compensation and penalties related to the two cumulative injuries and nothing for her alleged specific injury.

Gee petitioned the WCAB for reconsideration because the WCJ failed to apply the treating physician's presumption of correctness to Dr. Rhoades's medical conclusions. The WCJ explained in a report and recommendation to the WCAB that he did not apply the presumption because section 4062.9 had not been raised as an express issue either at the MSC or at trial, but suggested he might have reached different findings of fact had he applied the presumption. The WCAB adopted the WCJ's reasoning as its own and denied reconsideration.

## Discussion

In reviewing an order, decision, or award of the WCAB, an appellate court must determine whether, in view of the entire record, substantial evidence

supports the WCAB's findings. (§ 5952; *Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 164 [193 Cal.Rptr. 157, 666 P.2d 14].) ▇ This court will not accept the WCAB's factual findings if determined to be unreasonable, illogical, improbable, or inequitable when viewed in light of the overall statutory scheme. (*Western Growers Ins. Co. v. Workers' Comp. Appeals Bd., supra,* 16 Cal.App.4th at p. 233.) Furthermore, this court is not bound by the WCAB's conclusions on questions of law. "Where the award rests on an erroneous interpretation of law it will be annulled." (*Barns v. Workers' Comp. Appeals Bd.* (1989) 216 Cal.App.3d 524, 530 [266 Cal.Rptr. 503].) "Questions of statutory interpretation are, of course, for this court to decide." (*Western Growers Ins. Co. v. Workers' Comp. Appeals Bd., supra,* 16 Cal.App.4th at p. 233.)

Prior to 1993, disability claims were determined solely by a preponderance of the evidence. "In July 1993, the Legislature enacted major reforms to the workers' compensation system. Among the changes was legislation regarding the process of medical-legal evaluations and the determination of permanent disability and other medical issues." (*Minniear v. Mt. San Antonio Community College District* (1996) 61 Cal.Comp.Cases 1055, 1056, petn. for reconsideration and writ den. 61 Cal.Comp.Cases 1450.) Section 4062.9, which created a presumption of correctness applicable to the medical diagnosis of the employee's treating physician, provides: "In cases where an additional comprehensive medical evaluation is obtained under Section 4061 or 4062 [disputes concerning the employee's level of disability or permanent and stationary status], the findings of the treating physician are presumed to be correct. This presumption is rebuttable and may be controverted by a preponderance of medical opinion indicating an [*sic*] different level of impairment. However, this presumption shall not apply where both parties select qualified medical examiners."

On September 15, 2000, one day after the MSC but nearly two months before trial, the WCAB's en banc decision[6] in *Davis v. Interim Healthcare* (2000) 65 Cal.Comp.Cases 1039 (no writ filed) addressed the timing of raising the treating physician's presumption under section 4062.9. In *Davis,* a WCJ refused to apply the treating physician's presumption raised for the first time at trial. (*Davis,* at pp. 1039-1041.) On reconsideration, the injured employee argued she timely raised the presumption, and moreover, that as a statutory provision, the presumption need never be raised as a separate issue. (*Id.* at pp. 1040-1042.) The WCAB found the presumption may be properly raised up to the time of trial and remanded the matter to the WCJ to

---

[6]Unlike a three-member panel WCAB decision, an en banc WCAB decision binds all WCJ's, just as a published appellate opinion does. (O'Brien, Workers Compensation Claims and Benefits (10th ed. 2000) § 24.14(1), p. 661.)

reconsider the issue in light of the presumption. (*Id.* at p. 1044.1.) The WCAB also concluded that "in the interest of judicial economy, the section 4062.9 presumption must be raised as a separate issue." (*Id.* at p. 1044.) The WCAB found its conclusion "consistent with the purpose of section 5502(d)(3), that issues be set forth and resolved as expeditiously as possible."[7] (*Ibid.*)

According to the WCAB, Gee mentioned the treating physician's presumption only as a "brief reference" in her posttrial brief and did not set forth the presumption as a separate issue until petitioning for reconsideration. The WCAB concluded that under *Davis,* the treating physician's presumption did not apply to Dr. Rhoades's medical diagnosis because Gee untimely raised the presumption as a separate issue. However, we disagree with the *Davis* decision and therefore reject its application here.

"A presumption is an assumption of fact that the law *requires* to be made from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (a), italics added; *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1995) 37 Cal.App.4th 675, 682 [43 Cal.Rptr.2d 660].) As correctly articulated in *Davis,* "a presumption becomes operative at trial when the basic facts giving rise to the presumption are established by the pleadings, by stipulation, by judicial notice, or by evidence." (*Davis v. Interim Healthcare, supra,* 65 Cal.Comp.Cases at p. 1043; Evid. Code, §§ 604, 606.) " 'A presumption is either conclusive or rebuttable. Every rebuttable presumption is either (a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden of proof.' (Evid. Code, § 601.) [¶] 'A presumption affecting the burden of producing evidence requires the ultimate fact to be found from proof of the predicate facts in the absence of other evidence. If contrary evidence is introduced then the presumption has no further effect and the matter must be determined on the evidence presented. (Evid. Code, § 604.)' [Citation.] A presumption affecting the burden of proof has a more substantial impact in determining the outcome of litigation. The effect of a presumption affecting the burden of proof is 'to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact.' (Evid. Code, § 606.) While the presumption affecting the burden of producing evidence concerns only the particular litigation in

---

[7]Section 5502, subdivision (d)(3) provides: "If the claim is not resolved at the mandatory settlement conference, the parties shall file a pretrial conference statement noting the specific issues in dispute, each party's proposed permanent disability rating, and listing the exhibits, and disclosing witnesses. Discovery shall close on the date of the mandatory settlement conference. Evidence not disclosed or obtained thereafter shall not be admissible unless the proponent of the evidence can demonstrate that it was not available or could not have been discovered by the exercise of due diligence prior to the settlement conference."

which it applies, a presumption affecting the burden of proof 'is established to implement some public policy other than to facilitate the particular action in which it applies. [Citations.]' [Citation]; Evid. Code, § 605.)" (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd., supra,* 37 Cal.App.4th at p. 682.)

■ We agree "that the presumption in section 4062.9 was intended to affect the burden of proof because it was part of an effort by the Legislature to implement a public policy of reducing medical-legal costs and expediting resolution of medically related issues by restricting the number of medical evaluations." (*Davis v. Interim Healthcare, supra,* 65 Cal.Comp.Cases at p. 1043, citing *Minniear v. Mt. San Antonio Community College District, supra,* 61 Cal.Comp.Cases at pp. 1059-1060; see also *Keulen v. Workers' Comp. Appeals Bd.* (1998) 66 Cal.App.4th 1089, 1096 [78 Cal.Rptr.2d 500].) Accordingly, the treating physician's presumption imposes upon the party *against* whom it operates the burden of proof as to the *nonexistence* of the presumed fact. (Evid. Code, § 606; *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd., supra,* 37 Cal.App.4th at p. 682.)

■ Although the WCAB is not required to follow the common law or statutory law regarding the admission of evidence (§§ 5708, 5709), it must nevertheless adhere to the same rules of judicial notice applicable to courts of record. (*Benton v. Industrial Acc. Commission* (1925) 74 Cal.App. 411, 415 [240 P. 1021]; 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra,* Prehearing & Hearing Procedure, § 26.06[8], p. 1.) One such rule mandates that the WCAB take judicial notice of all federal and state decisional, constitutional, and statutory laws. (Evid. Code, § 451, subd. (a); see *Telles Transport, Inc. v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1160 [112 Cal.Rptr.2d 540] [WCAB abuses its discretion by not applying relevant state case law]; *Duggal v. G.E. Capital Communications Services, Inc.* (2000) 81 Cal.App.4th 81, 86 [96 Cal.Rptr.2d 383] [courts "must take judicial notice of the decisional and statutory law of California and the United States"].)

The WCAB must therefore take judicial notice of section 4062.9. Accordingly, the WCAB's consideration of the section 4062.9 presumption is mandatory and not dependent upon whether a party timely raises the provision as an issue. Whenever the presumption's underlying conditions are established by the pleadings, stipulations, judicial notice, or evidence, the trier of fact *must* adopt the initial assumption that the treating physician's medical diagnosis is correct. Under the terms of section 4062.9, the presumption of correctness applies by operation of law to the primary treating physician's findings when: (1) "an additional comprehensive medical

evaluation is obtained under Section 4061 or 4062," and (2) "both parties [do not] select the qualified medical examiners." (§ 4062.9.) Of course, as a rebuttable presumption, the treating physician's diagnosis "may be contraverted by a preponderance of medical opinion indicating an [*sic*] different level of impairment." (*Ibid.*; see *Keulen v. Workers' Comp. Appeals Bd., supra,* 66 Cal.App.4th at p. 1097.)

■ The parties do not dispute whether an additional comprehensive medical evaluation was obtained under section 4061 or 4062. However, the WCAB now contends the treating physician's presumption never arose because both Gee and Lucky selected QME's.

Dr. Nichols treated Gee between December 1996 and January 1998. Following Dr. Nichols's suggestion to seek the opinion of a workers' compensation specialist, Gee selected Dr. Rhoades to serve as her QME and to continue to serve as her treating physician. Lucky subsequently selected its own QME, Dr. Bray, to evaluate Gee. The WCAB contends the treating physician's presumption does not apply under its own terms because both parties selected QME's. We disagree with the WCAB's narrow and technical reading of section 4062.9.

■ In interpreting a statutory provision, we first look to the express language of the statute itself. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) However, we must further consider the provision in light of the entire statutory scheme to which it is part. (*Id.* at p. 388.) " 'Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in context of the statutory framework as a whole.' " (*Ibid.*; see also *American Psychometric Consultants, Inc. v. Workers' Comp. Appeals Bd.* (1995) 36 Cal.App.4th 1626, 1639 [43 Cal.Rptr.2d 254].)

■ Under section 4062.9 "the findings of the treating physician are presumed correct." Although section 4062.9 does not address the factual situation presented here, where more than one physician treats an injured worker, the workers' compensation system contemplates only one primary treating physician's medical report. Section 4061.5 provides: "The treating physician primarily responsible for managing the care of the injured worker or the physician designated by that treating physician shall . . . render opinions on all medical issues necessary to determine eligibility for compensation. In the event that there is more than one treating physician, a single report shall be prepared by the physician primarily responsible for managing the injured worker's care that incorporates the findings of the various treating physicians."

In March 2001, the WCJ expressly found Dr. Rhoades served as Gee's primary treating physician because no evidence demonstrated Dr. Rhoades improperly solicited Gee as a patient or accepted a "thing of value" in violation of section 139.2, subdivision (o).[8] The WCJ also relied on an IMC notice, sent to every injured worker in the state who selects a QME, which provides: "A QME may not offer or solicit you to become your treating physician. However, you have the right to request the QME to become your treating physician." (IMC Forms, form 12203B (rev. 1/97).) We find no reason to question the IMC's authority to permit injured workers to designate a QME as their treating physician.

Because there may be only one primary treating physician under section 4061.5, the WCJ's specific finding that Dr. Rhoades served as the primary treating physician trumps any prior treating physician designations. Accordingly, Dr. Nichols was not the treating physician primarily responsible for managing Gee's care and authorized to prepare a single report incorporating the findings of the various treating physicians. (§ 4061.5.)

Harmonizing sections 4061.5 and 4062.9, we find the treating physician's presumption of correctness applicable only to Dr. Rhoades. Similarly, the factual conditions giving rise to the presumption must be examined in relation to Dr. Rhoades's role as the primary treating physician. We thus conclude Dr. Rhoades's appointment as the primary treating physician cancelled his former designation as a QME for purposes of applying the treating physician's presumption. Under sections 4061.5 and 4062.9, the treating physician's presumption is barred only if both parties select QME's to dispute the medical diagnosis of the designated primary treating physician.

Here, only one party, Lucky, selected Dr. Bray as a QME to perform a comprehensive medical evaluation to rebut Dr. Rhoades's primary treating physician's conclusions. Gee did not select a QME to dispute Dr. Rhoades's diagnosis after he became the primary treating physician. Accordingly, the treating physician's presumption of correctness applied to Dr. Rhoades's medical reporting, and the WCAB should have weighed the medical evidence in light of the presumption.

We recognize the potential for an injured worker unhappy with a treating physician's diagnosis to select a QME with a more favorable diagnosis as the worker's primary treating physician in order to gain the advantage of the

---

[8]Section 139.2, subdivision (o), provides in relevant part: "An evaluator may not request or accept any compensation or other thing of value from any source that does or could create a conflict with his or her duties as an evaluator under this code."

section 4062.9 presumption. However, we must presume the Legislature and the IMC contemplated such a result in adopting the presumption and permitting QME's to serve as treating physicians. Our decision comports with the general legislative policy that the courts liberally construe workers' compensation laws in favor of employees. (§ 3202; *Garza v. Workmen's Comp. Appeals Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451].)

We also find no significant prejudice to an opponent or inconvenience to the WCAB in not raising the treating physician's presumption as a specific issue during the workers' compensation proceedings. Under section 4062.9, the parties and the trier of fact all have adequate notice of the presumption's applicability whenever the underlying facts are established. However, consistent with WCAB's goal of facilitating judicial economy, a party should raise any objections to the presumption's underlying factual conditions early in the litigation and no later than trial.

Although we disagree with *Davis*, under its own reasoning, we would conclude that here the treating physician's presumption applied because it was timely raised by the date of trial. Both the pretrial conference statement and the summary of trial evidence indicate the identity of the primary treating physician was in dispute. Thus, the question of whether Dr. Rhoades properly served as the primary treating physician was at issue since the beginning of the litigation. The record reveals no purpose to dispute the identity of the treating physician other than to determine whether to apply the presumption of correctness to that doctor's diagnosis. By questioning whether Dr. Rhoades met the legal requirements to serve as the treating physician, the parties effectively disputed whether the presumption of correctness applied to his medical reporting.

In summary, we find that once the WCJ determined Dr. Rhoades served as the primary treating physician and only one party, Lucky, selected a QME to prepare an additional medical evaluation to rebut Dr. Rhoades's medical findings, the treating physician's presumption applied. Accordingly, the WCJ and WCAB erred by not weighing the medical evidence in light of the presumption.

### DISPOSITION

The WCAB's decision is annulled. The matter is remanded to the WCAB with directions to reconsider the medical evidence by applying the treating

physician's presumption under Labor Code section 4062.9 to Dr. Rhoades's medical reporting.

Buckley, J., and Wiseman, J., concurred.

The petition of respondent Lucky Stores for review by the Supreme Court was denied July 10, 2002. Brown, J., did not participate therein.