50 Cal.Rptr.3d 860 (2006)
144 Cal.App.4th 1050
STATE COMPENSATION INSURANCE FUND, Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD and Brice Sandhagen, Respondents.
Brice Sandhagen, Petitioner,
v.
Workers' Compensation Appeals Board and State Compensation Insurance Fund, Respondents.
Nos. C048668, C049286.
Court of Appeal of California, Third District.
November 14, 2006.
As Modified November 30, 2006.
*862 Robert W. Daneri, Suzanne Ah-Tye, San Francisco, and Don E. Clark, for petitioner and respondent State Compensation Insurance Fund.
Sweeney and Forbes, and Marguerite Sweeney, Redding, for petitioner and respondent Brice Sandhagen.
*863 Hinden, Grueskin, Rondeau & Breslavsky, and Charles R. Rondeau, Bakersfield, for amicus curiae California Applicants Attorneys Association in support of petitioner Brice Sandhagen.
Neil P. Sullivan and Vincent Bausano, for respondent Workers' Compensation Appeals Board.
*861 RAYE, J.
The California Constitution directs the Legislature to create a system of workers' compensation that accomplishes "substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character." (Cal. Const., art. XIV, § 4.) A primary goal of the workers' compensation system is to secure prompt treatment for an injured worker to facilitate his or her return to the work force at the earliest possible time. (Avalon Bay Foods v. Workers' Comp. Appeals Bd. (1998) 18 Cal.4th 1165, 1175-1176, 1178, 77 Cal.Rptr.2d 552, 959 P.2d 1228.)
The employer of an injured worker is responsible for all medical treatment reasonably necessary to cure or relieve the worker from the effects of injury. (Lab. Code, § 4600, subd. (a).)[1] In order to protect the injured employee's right to prompt appropriate treatment and to reduce costs, in 2003 the Legislature directed the Administrative Director (Director) of the Division of Workers' Compensation to establish a medical treatment utilization schedule incorporating evidence-based, peer-reviewed, nationally recognized standards of care. (§ 5307.27.)
Under this statutory scheme, the treating physician submits a request for treatment to the employer or the employer's insurer.[2] "Utilization review" (UR) is the process by which an employer reviews the recommendations of a treating physician and then decides whether to approve, modify, delay, or deny authorization for treatment based on medical necessity. In acting on treatment recommendations submitted under UR procedures, the employer is bound by section 4600, subdivision (b), which defines medical treatment that is reasonably required to cure or relieve the injured worker as treatment that is based upon guidelines adopted by the Director.
The UR process is subject to mandatory time frames. Section 4610, subdivision (g)(1) requires an employer to timely approve, modify, delay, or deny treatment requests. UR decisions must be communicated within five working days from receipt of the information, and in no event more than 14 days from the date of the recommendation. (Ibid.)
In this review of a decision by the Workers' Compensation Appeals Board (WCAB), we consider the consequences that flow from an employer's failure to timely act on an injured worker's treatment request under the UR process. Brice Sandhagen, the injured employee, argues that by failing to timely respond to his treatment request, his employer forfeited its right to deny the request under the UR process. Sandhagen also insists that because the UR process is mandatory and the exclusive means by which an employer can modify, delay, or deny treatment, his treatment request must be granted by default.
The employer's insurer, State Compensation Insurance Fund (Fund), disagrees and asserts that only monetary penalties can be imposed for its tardiness; it retains the right to deny the treatment request under the UR process and may pursue *864 remedies under the dispute resolution procedures set forth in section 4062.
The WCAB asserts, as a threshold matter, that its decision is not a final order and the petition for review is premature. On the merits, the WCAB argues it properly determined that as a result of Fund's failure to meet UR time deadlines, Fund is precluded from using UR procedures or medical reports to support the denial of Sandhagen's treatment request but retains the right to object to Sandhagen's treatment request under section 4062 based on other evidence. The practical consequences of Fund's untimeliness, under the WCAB's reasoning, would be to deprive Fund of any reliance on the UR report denying treatment and require it to bear the burden of proof and persuasion in proceedings under section 4062.
We shall deny Fund's and Sandhagen's petitions for writ of review.

FACTUAL AND PROCEDURAL BACKGROUND
In October 2003 a car struck Sandhagen as he worked as a foreman on a road construction project. Sandhagen has received medical treatment continuously since the accident. Sandhagen's physician referred him to SpineCare Medical Group, Inc., for a joint consultation by Drs. Goldthwaite and Josey.
The consulting physicians recommended an MRI of Sandhagen's cervical and upper thoracic spine to determine if there were any disc herniations or disc degeneration causing Sandhagen's pain. The consulting physicians produced a report dated May 14, 2004, which they faxed to Fund on May 24, 2004, with a request to authorize the recommended MRI.
Fund referred the matter to Dr. Krohn to review the request under the UR process. On June 21, 2004, 28 days after the MRI authorization request, Dr. Krohn sent a written denial, citing new medical treatment guidelines.
Prior to the denial, on June 11, 2004, Sandhagen filed a request for an expedited hearing on the ground that Fund failed to meet the deadline for conducting UR under section 4610, subdivision (g)(1). An expedited hearing took place on July 15, 2004, on the sole issue of the need for the recommended MRI.
The WCAB administrative law judge (WCJ) found that Fund's failure to comply with the UR deadlines barred it from relying on the UR process to deny Sandhagen treatment. Only Dr. Goldthwaite's report remained admissible; Dr. Krohn's report was inadmissible. The WCJ also found the MRI authorization request consistent with the new treatment guidelines.
Fund sought reconsideration from the WCAB. Fund argued the consequences for failing to meet UR guidelines are specified in section 4610, subdivision (i), which provides for administrative penalties, and in section 4610.1, which allows possible penalties for delay under section 5814. Fund claimed nothing in the Legislature's formation of the UR process allows exclusion of a UR report.
Sandhagen answered, contending section 4610, subdivision (g) requires an employer to meet specific time deadlines, and therefore Fund cannot rely on the UR process to justify denial of treatment. In addition, the WCJ properly excluded the UR doctor's denial letter. Sandhagen also argued he had met his evidentiary burden with substantial evidence, i.e., Dr. Goldthwaite's report.
Reasoning that untimely UR reports are inadmissible, the WCJ recommended that Fund's petition for reconsideration be denied and that an employer who fails to conform to the deadlines must fall back on *865 the more cumbersome process set forth in section 4062.
The WCAB granted reconsideration. Due to the important legal issues presented and to secure uniformity of future decisions, the matter was assigned to the WCAB as a whole for an en banc decision.
On November 16, 2004, the WCAB issued its decision, holding:
"(1) The utilization review time deadlines of section 4610(g)(1) are mandatory and, if a defendant fails to meet these mandatory deadlines, it is precluded from using the utilization review procedure for the particular medical treatment dispute in question;
(2) If a defendant undertakes an untimely utilization review procedure, any utilization review report obtained as to the particular treatment in dispute is not admissible in evidence, and any utilization review report obtained cannot be forwarded to an AME or QME if section 4062(a) procedures are timely pursued;[3] and
(3) When a defendant does not meet the section 4610(g)(1) deadlines, it may use the procedure established by section 4062(a) to dispute the treating physician's treatment recommendation; however, "the defendant (not the applicant) is then the `objecting party' and the defendant must meet the section 4062(a) deadlines, unless those deadlines are extended for good cause or by mutual agreement." The WCAB rescinded the WCJ's determination that Sandhagen was entitled to the medical treatment in dispute. Instead, the WCAB gave Fund a reasonable opportunity to obtain a section 4062, subdivision (a) evaluation to assess the reasonableness and necessity of treatment.
Fund filed a petition for writ of review. We issued an order granting review on February 25, 2005. Sandhagen also sought review of the WCAB decision, specifically the WCAB's finding that a party failing to comply with the UR deadlines may nonetheless object to the treatment authorization and initiate dispute resolution under section 4062, subdivision (a). We issued an order granting review on July 18,2005.
With leave of court, the California Applicants Attorneys Association filed an amicus brief in support of Sandhagen.

DISCUSSION

I
This case requires us to determine the meaning and effect of section' 4610, which establishes the UR process, in relationship to section 4062, which provides for resolution of disputes between injured workers and their employers generally. Our inquiry into legislative meaning begins as always with the language of the statute; the plain meaning of the statutory language is the best indicator of the Legislature's intent. However, we look not only to "the language itself [but also to] the specific context in which that language is used, and the broader context of the statute as a whole." (Robinson v. Shell Oil Co. (1997) 519 U.S. 337, 341, 117 S.Ct. 843, 846, 136 L.Ed.2d 808, 813.) Faced with an issue of statutory interpretation, we are obliged to adopt a meaning for the language in issue consistent with and promotive of the purpose of workers' compensation law. (Fresno Unified School Dist. v. Workers' Comp. Appeals Bd. (2000) 84 Cal.App.4th 1295, 1305-1306,101 Cal.Rptr.2d 569.)
We are assisted in this endeavor by the WCAB, which is legislatively endowed with judicial powers pursuant to the California Constitution. (McHugh v. Santa Monica *866 Rent Control Bd. (1989) 49 Cal.3d 348, 355-356, 261 Cal.Rptr. 318, 777 P.2d 91; § 111, subd. (a); Cal. Const., art. XIV, §§ 1, 4.) It exercises exclusive original jurisdiction over all workers' compensation claims and any rights and responsibilities pertaining thereto. (Cal. Const, art. XIV, § 4; §§ 5300, 5301; Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund (2001) 24 Cal.4th 800, 818, 102 Cal.Rptr.2d 562, 14 P.3d 234; La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co. (1994) 9 Cal.4th 27, 35, 36 Cal.Rptr.2d 100, 884 P.2d 1048.) This includes controversies between employer and employee involving the payment of compensation. (§ 4604.) Medical treatment falls within the statutory definition of "compensation." (§ 3207.) Moreover, specific jurisdiction has been conferred on the WCAB over controversies related to medical treatment arising under sections 4600 to 4604, inclusive, in the absence of an agreement between the medical provider and the employer or insurer. (§ 5304.)
In the exercise of its jurisdiction, the WCAB interprets workers' compensation laws. (Pinkerton, Inc. v. Workers' Comp. Appeals Bd (2001) 89 Cal.App.4th 1019, 1029, 107 Cal.Rptr.2d 787.) It must interpret them in a manner consistent with their intended purpose and harmonized within the statutory framework as a whole. (Chevron U.S.A, Inc. v. Workers' Comp. Appeals Bd. (1999) 19 Cal.4th 1182, 1194, 81 Cal.Rptr.2d 521, 969 P.2d 613; Gee v. Workers' Comp. Appeals Bd. (2002) 96 Cal. App.4th 1418, 1427, 118 Cal.Rptr.2d 105.) The findings of the WCAB on questions of fact are conclusive, but its construction of statutes and how they apply in a given situation are matters of law subject to de novo appellate review. Nevertheless, we give great weight to the WCAB's administrative construction of the statutes it is charged to enforce and interpret unless the construction is clearly erroneous. An erroneous interpretation is a ground for annulment of its decision. (Lockheed Martin Corp. v. Workers' Comp. Appeals Bd. (2002) 96 Cal.App.4th 1237, 1241, 117 Cal. Rptr.2d 865; Cedillo v. Workers' Comp. Appeals Bd (2003) 106 Cal.App.4th 227, 232,130 Cal.Rptr.2d 581.)

II

STATUTORY BACKGROUND
Section 4600 establishes an employer's responsibility for all medical treatment reasonably required to cure or relieve the worker from the effects of his or her injury. The Director is empowered to develop guidelines for determining whether proposed medical treatment is mandated by section 4600: "[M]edical treatment that is reasonably required to cure or relieve the injured worker from the effects of his or her injury means treatment that is based upon the guidelines adopted by the [Director] pursuant to Section 5307.27 ...."
An employer's decisions regarding the necessity of an injured employee's proposed treatment are generally made within the matrix of the UR process set forth in section 4610, subdivision (b), which provides that "[e]very employer shall establish a[UR] process in compliance with this section, either directly or through its insurer or an entity with which an employer or insurer contracts for these services." The UR process allows an employer to prospectively, retrospectively, or concurrently review the recommendations of the treating physician and decide whether to approve, modify, delay, or deny authorization for the treatment based on medical necessity. (§ 4610, subd. (a).) Each UR process is governed by written policies and procedures. (§ 4610, subd. (c).)
"If the employee objects to a decision made pursuant to Section 4610 to modify, *867 delay, or deny a treatment recommendation," recourse is provided under section 4062.[4] Recourse is also provided under section 4062 "[i]f either the employee or employer objects to a medical determination made by the treating physician concerning any medical issues not covered by Section 4060 or 4061 and not subject to Section 4610 ...." (§ 4062, subd. (a).) Objections must be timely filed and are followed by a medical review.
The medical review conducted under section 4062 differs from that conducted under section 4610. Under section 4062, the employee undergoes a comprehensive medical evaluation. "[N]o other medical evaluation shall be obtained." (§ 4062, subd. (a).) If the employee is not represented by an attorney, the employee selects the evaluator from a panel of three "qualified medical evaluators" (QME). (§ 4062.1, subds. (b), (c).) If the employee is represented by counsel, the parties either concur on an "agreed medical evaluator" (AME), or failing agreement, the selection is made from a panel of "qualified medical evaluators" (QME). (§ 4062.2, subd. (b).) A decision is rendered.
Once the AME/QME process is completed, either party may bring the decision before a WCJ for review.[5]
As part and parcel of the UR procedure, section 4610 establishes mandatory time frames for compliance with the process. Section 4610, subdivision (g) states: "In determining whether to approve, modify, delay, or deny requests by physicians prior to, retrospectively, or concurrent with the provisions of medical treatment services to employees all of the following requirements must be met: [¶] (1) Prospective or concurrent decisions shall be made in a timely fashion that is appropriate for the nature of the employee's condition, not to exceed five working days from the receipt of the information reasonably necessary to make the determination, but in no event more than 14 days from the date of the medical treatment recommendation by the physician. In cases where the review is retrospective, the decision shall be communicated to the individual who received services, or to the individual's designee, within 30 days of receipt of information that is reasonably necessary to make this determination." Section 4610, subdivision (g)(2) sets forth the deadline of 72 hours when the employee's condition presents a serious threat to his or her health.
Section 4610, subdivision (g)(5) allows the employer to notify the employee and the physician in writing if the employer cannot make a decision within the required timeframes.[6] Finally, section 4610, subdivision *868 (i) contemplates an employer's failure to meet the UR timelines and states: "If the {Director] determines that the employer, insurer, or other entity subject to this section has failed to meet any of the timeframes in this section, or has failed to meet any other requirement of this section, the administrative director may assess, by order, administrative penalties for each failure. A proceeding for the issuance of an order assessing administrative penalties shall be subject to appropriate notice to, and an opportunity for a hearing with regard to, the person affected. The administrative penalties shall not be deemed to be an exclusive remedy for the [Director]. These penalties shall be deposited in the Workers' Compensation Administration Revolving Fund."
In addition to any penalties assessed under section 4610, subdivision (i), section 4610.1 also provides that employees may be entitled to penalties for unreasonable delay of medical treatment where the employer unreasonably delays the UR process.[7]

III

RIPENESS
The WCAB argues its November 16, 2004, decision is not a final order subject to a petition for writ of review. According to the WCAB, the decision is not final because it did not determine any substantive right or liability of the parties. In addition, the decision did not determine any "threshold" issue, but only determined interlocutory evidentiary and procedural issues. We disagree.
A petition for writ of review may be taken only from a final order of the WCAB. The final order requirement eliminates piecemeal appeals and the concomitant burden on the courts. The requirement also serves to avoid multiple appeals that delay and impede the resolution of the case. (Maranian v. Workers' Comp. Appeals Bd. (2000) 81 Cal.App.4th 1068, 1073-1074, 97 Cal.Rptr.2d 418 (Maranian).)
In its November 16, 2004, decision, the WCAB rescinded the WCJ's previous decision and remanded the matter to the trial level for further proceedings and a new decision. According to the WCAB, "Based on the foregoing history, [Fund] does notand cannotcontend that the WCAB's November 16, 2004 decision resolved any substantive right or liability. To the contrary, the WCAB rescinded the WCJ's decision awarding the disputed medical treatment to Sandhagen and, instead, remanded the issue to the WCJ for further proceedings and a new decision." Therefore, the WCAB concludes, the order cannot be considered final since it failed to determine any substantive right or liability.
However, as Fund points out, the WCAB's rescission and remand order was *869 for further proceedings at the trial level and "a new decision consistent with this opinion." We focus on the WCAB's opinion, not on the ultimate disposition of the treatment dispute between Fund and Sandhagen.
In its decision, the WCAB held that failure to meet the UR deadlines specified in section 4610, subdivision (g)(1) prevents the employer from utilizing the UR process and renders untimely UR reports inadmissible. Fund challenges this holding. Nothing in the rescission and remand order allows the WCJ to depart from this holding on remand.
A final order for the purposes of appellate review of a WCAB decision is one that settles an issue critical to the claim, even if it does not resolve all issues. "A `final order' for purposes of section 5900 includes any order which settles, for purposes of the compensation proceeding, an issue critical to the claim for benefits, whether or not it resolves all the issues in the proceeding or represents a decision on the right to benefits." (Maranian, supra, 81 Cal.App.4th at p. 1075, 97 Cal.Rptr.2d 418.)
Here, the WCAB issued a decision on a substantial issue critical to Sandhagen's claim. The WCAB determined that failure to comply with UR timelines prohibits an employer from utilizing the UR procedure or admitting UR reports into evidence. As the WCAB explained, the decision was assigned to the WCAB as a whole for an en banc decision "[b]ecause of the important legal issues presented, and in order to secure uniformity of decision in the future ...." The decision challenged by Fund determined an issue critical to Sandhagen's claim for benefits and is therefore final and ripe for appeal.

IV

REMEDIES
Fund, Sandhagen, and the WCAB agree that section 4610 establishes mandatory time frames for UR compliance. The parties disagree over the consequences of a failure to comply with the time frames. The WCAB reasoned that because "section 4610(g)(1) imposes a mandatory duty on a defendant to comply with its deadlines, it would be incongruous to permit a defendant that fails to comply with the deadlines to nevertheless obtain a[UR] report and to then enter it into evidence."
Citing the penalty provisions of section 4610, Fund does not perceive an incongruity. Fund points out that the Legislature has recognized the need for speedy disposition of treatment requests, imposed tight time deadlines, and vested authority in the Director to impose administrative penalties for delay and to fashion other, unspecified relief. Because the statutory scheme vests remedial powers in the Director and does not mention the WCAB, or expressly provide that untimely UR reports shall be inadmissible, Fund questions the WCAB's authority to fashion its own evidence preclusion remedy. The WCAB's position is further weakened, according to Fund, by the fact that section 4610 is neither a discovery statute nor within the ambit of the WCAB's dispute resolution process.
The WCAB's responsive arguments are not entirely on point. There is little doubt, as the WCAB argues, that the Legislature in establishing the mandatory UR deadlines sought to ensure that an employer who seeks to undertake the UR process "does so expeditiously, so that any [UR] decision regarding what medical treatment is `reasonably required' for the injured worker is not unduly delayed." There is also merit to the WCAB's assertion that the mandatory deadlines ensure both that *870 (1) if an employer under the UR process authorizes treatment the employee will promptly receive such treatment, and (2) if, as a result of the UR process, the employer denies authorization for treatment, the injured employee can immediately begin the dispute resolution process and, if necessary, bring the issue before the WCAB through an expedited hearing or a nonexpedited mandatory settlement conference.
We are less persuaded by the WCAB's assertion that if administrative penalties are all an employer must fear, then it could indefinitely delay obtaining a UR report, notwithstanding the section 4610, subdivision (g)(1) deadlines, and, as a result, "the medical treatment dispute resolution process established by the Legislature would be thrown into utter chaos."[8] An expression of the need for a rule, no matter how compelling, cannot fill a gap in legal authority. The WCAB's foreboding sheds no light on the source of its authority to exclude untimely UR reports.
Nevertheless, we conclude that the WCAB acted within its authority in prohibiting the use of a report generated by an untimely UR process in subsequent proceedings challenging the treatment decision.
Fund's assertion that the Director is vested with exclusive authority to impose remedies for violation of UR time deadlines misperceives the respective roles of the Director and the WCAB in relationship to the UR process. The UR process has two aspects. It provides a process for insuring the prompt review and disposition of treatment requests. In this aspect, it is not a vehicle for dispute resolution; indeed, one supposes that most requests for medical treatment are approved by employers without dispute or controversy. However, the UR process becomes part of the workers' compensation dispute resolution scheme when the employee is dissatisfied with the outcome, at which point the provisions of section 4062 and the full panoply of procedures before the WCAB come into play.
As a process for insuring the timely disposition of treatment requests, the UR process falls within the authority of the Director. Timeliness is a primary goal, and the power of the Director to impose monetary penalties and fashion other remedies serves to facilitate that goal. The tardy approval of a treatment request is no less a vice than a late disapproval. In either instance, the Director is empowered to act. In vesting authority in the Director to impose penalties and in providing that "[t]he administrative penalties shall not be deemed to be an exclusive remedy for the [Director]" (§ 4610, subd. (i)), the Legislature was addressing the Director's role as overseer of the process established for the timely review and disposition of treatment requests.
However, the UR process becomes an integral part of the workers' compensation dispute resolution scheme when an employee or employer invokes the procedures set forth in section 4062. The procedural mechanism created by section 4062 implicates the authority of the WCAB, and the WCAB's authority is expressly acknowledged. While the UR process is a records review process, section 4062 is an evidence collection and evaluation process with one set of procedures that pertains when the *871 employee is represented by counsel and another when the employee is unrepresented. Once the AME/QME process is completed, either party may bring the decision before a WCJ for review.[9] The decision of the WCJ is then reviewable by the WCAB. Barring intervention by the Court of Appeal, the decision of the WCAB is final.
Section 133 grants the WCAB the power to "do all things necessary or convenient in the exercise of any power or jurisdiction conferred upon it." The WCAB's authority to develop and enforce rules of evidence cannot seriously be questioned. "[T]he WCAB is empowered to adopt reasonable rules of practice and procedure to regulate and prescribe the nature of proof and evidence in workers' compensation cases." (Crawford v. Workers' Comp. Appeals Bd. (1989) 213 Cal. App.3d 156, 168, 259 Cal.Rptr. 414.) It may do so by formal rule making or may, as here, issue a precedent decision that interprets and applies the law in the course of a case-specific adjudication. (Rea v. Workers' Comp. Appeals Bd. (2005) 127 Cal.App.4th 625, 648-649, 25 Cal.Rptr.3d 828.)
The WCAB has previously considered the admissibility of UR reports in light of section 5703, subdivision (a), which states, in part: "The [WCAB] may receive as evidence either at or subsequent to a hearing, and use as proof of any fact in dispute, the following matters, in addition to sworn testimony presented in open hearing: [¶] (a) Reports of attending or examining physicians." Section 5703, enacted prior to section 4610, would have made all UR reports inadmissible, since they are not reports of the attending or examining physicians but simply reflect a UR physician's opinion on the medical necessity of proposed treatment, formulated without examining the injured employee. (§ 4610, subds. (a)-(f).) In Willette v. Au Electric Corp. (2004) 69 Cal.Comp.Cases 1298 (Willette), the WCAB noted section 5703's exclusion of UR reports but attempted to harmonize the UR process with section 5703. The WCAB determined the statutorily created UR process yielded a UR report that was an essential part of the WCAB's record in any post-UR proceeding regarding a medical treatment dispute. Therefore, the WCAB held that section 4610 created a limited exception to section 5703's prohibition against admitting reports of nonattending, nonexamining physicians. The WCAB found this limited exception consistent with the overall statutory scheme. (Willette, supra, 69 Cal. Comp.Cases at pp. 1306-1307.)
In fashioning rules of evidence, the WCAB may properly take into account the purposes of the Workers' Compensation Act and impose rules that advance those purposes. The Willette decision was an appropriate exercise of the WCAB's authority to interpret statutes in a manner consistent with their intended purpose and in harmony with the statutory framework as a whole.
One of the purposes of the Workers' Compensation Act is to guarantee prompt, limited compensation for an employee's work-related injuries. (Land v. Workers' Comp. Appeals Bd. (2002) 102 Cal.App.4th 491, 496, 125 Cal.Rptr.2d 432 (Land).) The Legislature intended the UR process to ensure quality, standardized medical care for workers. Mandatory deadlines facilitate the prompt, expeditious resolution of the employee's request for medical treatment. If, as a result of the UR process, the employer authorizes the treatment, then the employee will promptly *872 receive such treatment. If the employer denies authorization, the employee can quickly begin the dispute resolution process. Untimely UR reports stymie the efficiency and efficacy of this process.
In light of this legislative purpose, the WCAB could properly determine that the limited exception to section 5703 created in the Willette decision should not be extended to UR reports prepared in violation of section 4610. To permit the consideration of untimely reports would be inimical to a core purpose of the Workers' Compensation Act, that of providing prompt compensation to injured workers and prompt resolution of disputes. Moreover, it would be anomalous to permit consideration of the reports in AME/QME proceedings while excluding them from consideration in proceedings before WCJ's and before the WCAB. We conclude the WCAB, which exercises exclusive original jurisdiction over all workers' compensation claims and any rights and responsibilities pertaining thereto, did not exceed its jurisdiction in deciding that untimely UR reports cannot be considered for any purpose.

V
The WCAB argues that in order to harmonize the entire statutory scheme established by the Legislature for resolving medical treatment disputes, and to ensure the prompt provision of medical treatment to an injured employee, it correctly found an employer's failure to meet the UR mandatory deadlines renders any UR report inadmissible.
In addition, the WCAB contends the consequences of an employer's failure to comply with the mandatory time frames are not limited, as Fund suggests, to civil penalties imposed by the Director or to section 5814 penalties imposed by the WCAB. The WCAB acknowledges that section 4610, subdivision (i) allows the Director to assess administrative penalties for failure to meet time frames. However, section 4610, subdivision (i) also states: "The administrative penalties shall not be deemed an exclusive remedy for the [Director]." Therefore, the WCAB concludes, if penalties under section 4610, subdivision (i) are not the sole remedy available to the Director, who has no jurisdiction over workers' compensation proceedings, "then the availability of administrative penalties certainly does not limit the remedies of the WCAB."
We find this reasoning persuasive. Section 133 grants the WCAB the power to "do all things necessary or convenient in the exercise of any power or jurisdiction conferred upon it." As noted earlier, among the purposes of the Workers' Compensation Act is the guarantee of prompt, limited compensation for an employee's work-related injuries. (Land, supra, 102 Cal.App.4th at p. 496, 125 Cal.Rptr.2d 432.) Requiring employers to comply with UR deadlines or forfeit the use of any UR reports squarely falls within the ambit of providing prompt treatment.
Fund also asserts the WCAB may impose penalties under section 5814 if an employer delays completion of the UR process.[10] However, as discussed above, the *873 availability of penalties under section 5814 does not automatically preclude the WCAB from excluding UR reports from evidence when untimely obtained. Courts have found section 5814 is not the exclusive remedy against a defendant whose actions are unreasonable. (See Rhiner, supra, 4 Cal.4th at p. 1227, 18 Cal.Rptr.2d 129, 848 P.2d 244 [section 4650 penalty does not duplicate or supersede section 5814; instead, section 4650 supplements the section 5814 penalty].)

VI
The WCAB argues the admission of an untimely UR review is also precluded by section 5703, subdivision (a), which states, in part: "The [WCAB] may receive as evidence either at or subsequent to a hearing, and use as proof of any fact in dispute, the following matters, in addition to sworn testimony presented in open hearing: [¶] (a) Reports of attending or examining physicians."
As the WCAB points out, under the UR process, a treating physician's report regarding proposed treatment is transmitted to a UR physician employed by, or under contract with, the defendant. The UR physician then renders an opinion on the medical necessity of proposed treatment, without examining the injured employee. (§ 4610, subds. (a)-(f).)
Section 5703 makes these UR reports inadmissible, since they are not reports of the attending or examining physicians. As discussed earlier, following the enactment of section 4610, the WCAB considered the admissibility of UR reports in Willette, supra, 69 Cal.Comp.Cases 1298.
From Willette, the WCAB extrapolates that an untimely UR report violates section 4610 and therefore does not come within the limited exception to section 5703. In other words, the Willette exception only applies to UR reports properly obtained under section 4610. Since Fund's UR report does not comply with section 4610's mandatory deadlines, it is inadmissible under section 5703.
Fund does not respond to this argument. We conclude the WCAB's interpretation of the effect of section 5703 on untimely UR reports provides additional support for its argument that such reports are inadmissible.

VII
Sandhagen filed a separate writ of review, arguing a UR under section 4610 is required for every medical treatment request and only the employee may utilize section 4062 to dispute a medical treatment request. Fund disputes these interpretations of sections 4610 and 4062.
Sandhagen argues that section 4610 "clearly and unambiguously" requires employers to follow the UR procedure for all medical treatment requests. Section 4610, subdivision (g) states: "In determining whether to approve, modify, delay, or deny requests by physicians prior to, retrospectively, or concurrent with the provisions of medical treatment services to employees all of the following requirements must be met...." Sandhagen asserts this language places a mandatory duty on the employer to utilize the UR process for every treatment request.
Fund contends that although employers are required to establish a UR process, employers are not required to apply that process to every request for treatment. The WCAB's interpretation comports with Fund's interpretation: "[T]here is nothing in section 4610 that requires an employer to use the [UR] process in every case. To *874 the contrary, section 4610 is silent on whether an employer must always use the utilization review procedure."
We agree with the analyses of both the WCAB and Fund. Section 4610, subdivision (b) states: "Every employer shall establish a utilization review process in compliance with this section, either directly or through its insurer or an entity with which an employer or insurer contracts for these services." Section 4610, subdivision (b) requires the establishment of a UR process; it does not mandate use of that process for each and every medical treatment request.
Section 4610, subdivision (g), quoted above, provides the requirements the employer's UR process must meet if the employer decides to utilize the UR process. Section 4610, subdivision (g) does not state that all medical treatment requests must be subject to these requirements.
The WCAB provided several rationales for not subjecting all requests to the UR process. For example, if an employer determines, without UR, that the recommended treatment is reasonably required, imposing the UR process would be both time consuming and expensive.
In addition, the WCAB noted the UR process by its nature does not involve either an interview with or a physical examination of the injured employee and ordinarily does not involve a thorough medical review. "Thus, in cases involving complex medical treatment issueswhere either a physical or mental examination, a complete history of the injury, a complete medical history, or a complete medical record review could be called fora utilization review may result in needless expense to the defendant, as well as needless to [sic] delay to the applicant." Instead, it may be more expeditious and economical for the employer to go directly to the QME/AME process.
We agree with the WCAB that the language of section 4610 does not impose the requirement that a UR must be used in every case. An employer has discretion to undertake or not undertake UR with respect to any particular proposed medical treatment.
Sandhagen also takes issue with the WCAB's finding that an employer may utilize section 4062. According to Sandhagen, only the employee may invoke section 4062.
Section 4062, subdivision (a) states: "If either the employee or employer objects to a medical determination made by the treating physician concerning any medical issues not covered by Section 4060 or 4061 and not subject to Section 4610, the objecting party shall notify the other party in writing of the objection...." Sandhagen argues that since UR under section 4610 must be used for every medical treatment request, there is no case in which section 4062 is available to employers in order to resolve a treatment dispute.
However, as previously noted, section 4610 does not require employers to utilize UR for each and every request. In addition, section 4062, subdivision (a) explicitly states, "If either the employee or employer objects ...," making section 4610 available to both employers and employees. In construing a statute, we presume every word, phrase, and provision was intended to have some meaning, and a construction making some words surplusage is to be avoided. (Hassan v. Mercy American River Hospital (2003) 31 Cal.4th 709, 715-716, 3 Cal. Rptr.3d 623, 74 P.3d 726.)
Section 4610, subdivision (g)(3)(A) provides, in part: "If the request is not approved in full, disputes shall be resolved in accordance with Section 4062." However, as the WCAB noted: "This language means simply that, if a defendant timely *875 elects to follow the [UR] process but does not fully authorize the proposed treatment after [UR] is completed, then any remaining disputes regarding the particular proposed treatment must be resolved using the procedure established by section 4062(a)."
Accordingly, the WCAB correctly found: "Any other interpretation of section 4062(a) would lead to absurd results, in violation of basic principles of statutory construction. [Citations.] As discussed above, the Legislature has not required a defendant to follow the [UR] process in every case. Yet, if a defendant elected to exercise its right not to undertake [UR], but then Were entirely precluded from using the QME/AME process to resolve the medical treatment dispute, the defendant would be worse off than it would have been had section 4610 never been enacted."

DISPOSITION
Fund's petition for writ of review is denied. Sandhagen's petition for writ of review is denied. The parties shall bear their own costs in this writ proceeding.
SCOTLAND, P.J., and CANTILSAKAUYE, J., concur.
NOTES
[1] All further statutory references are to the Labor Code.
[2] Referred to herein collectively as "employer."
[3] AME refers to an agreed medical evaluator. QME refers to a qualified medical evaluator.
[4] Section 4610, subdivision (g)(3)(A) states, in part: "If the [treating physician's] request [for authorization of medical treatment] is not approved in full, disputes shall be resolved in accordance with Section 4062." Section 4610, subdivision (g)(3)(B) states, in part: "If the insurer or self-insured employer disputes whether or not one or more services offered concurrently with a[UR] were medically necessary to cure and relieve, the dispute shall be resolved pursuant to section 4062
[5] We note that in the present case, the employee brought the matter for review before a WCJ after the UR time deadlines expired but in advance of a UR determination. The WCAB decision disapproves this procedure.
[6] Section 4610, subdivision (g)(5) states, in part: "If the employer, insurer, or other entity cannot make a decision within the timeframes specified in paragraph (1) or (2) because the employer ... is not in receipt of all of the information reasonably necessary and requested, because the employer requires consultation by an expert reviewer, or because the employer has asked that an additional examination or test be performed upon the employee that is reasonable and consistent with good medical practice, the employer shall immediately notify the physician and the employee, in writing, that the employer cannot make a decision within the required timeframe, and specify the information requested but not received, the expert reviewer to be consulted, or the additional examinations or tests required."
[7] Section 4610.1 states: "An employee shall not be entitled to an increase in compensation under Section 5814 for unreasonable delay in the provision of medical treatment for periods of time necessary to complete the utilization review process in compliance with Section 4610. A determination by the appeals board that medical treatment is appropriate shall not be conclusive evidence that medical treatment was unreasonably delayed or denied for purposes of penalties under Section 5814. In no case shall this section preclude an employee from entitlement to an increase in compensation under Section 5814 when an employer has unreasonably delayed or denied medical treatment due to an unreasonable delay in completion of the utilization review process set forth in Section 4610."
[8] The WCAB insists that an employer's tardy UR report Would force the employee to wait until the report was obtained to begin the QME or AME process under sections 4610, subdivisions (g)(3)(A), (g)(3)(B) and 4062, subdivision (a). The employer's initial tardiness, like a stalled car on a crowded freeway, slows down the entire process, including the employee's ability to request an expedited hearing.
[9] See footnote 5 ante, at p. 867.
[10] Section 4610.1 states: "An employee shall not be entitled to an increase in compensation under Section 5814 for unreasonable delay in the provision of medical treatment for periods of time necessary to complete the [UR] process in compliance with Section 4610. A determination by the [WCAB] that medical treatment is appropriate shall not be conclusive evidence that medical treatment was unreasonably delayed or denied for purposes of penalties under Section 5814. In no case shall this section preclude an employee from entitlement to an increase in compensation under Section 5814 when an employer has unreasonably delayed or denied medical treatment due to an unreasonable delay in completion of the [UR] process set forth in Section 4610."